**INSURANCE COMPANY OF NORTH AMERICA and Birmingham Fire Insurance Company of Pennsylvania**

v.

**M. V. PUTNEY, Louis Carreras et al.**

**Civ. A. No. 1778.**

United States District Court
E. D. Virginia, Richmond Division.
Oct. 12, 1955.

---

Alex H. Sands, Jr., Richmond, Va., for plaintiffs.

Gordon Lewis and A. Fleet Dillard, Tappahannock, Va., for Michael, Anthony, John, Daniel and Nicholas Cardone and Phillip, Rubin and Louis Levin, defendants.

A. Fleet Dillard, Tappahannock, Va., for Hundley and Evans, defendants.

Dabney Overton, Warsaw, Va., for M. V. Putney and Louis Carreras and Royal Auto Parts, Inc., defendants.

Israel Steingold, Richmond, Va., for Inland Rubber Corp., intervenor.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., and Edward W. Rothe, Dept. of Justice, Washington, D. C., for the United States.

STERLING HUTCHESON, Chief Judge.

This case involves the proceeds of two fire insurance policies, one payable to M. V. Putney and Louis Carreras, trading as Auto Parts Warehouse, and the other payable to Auto Parts Warehouse. The insurance companies filed interpleader proceedings in which the proceeds of the policies were deposited with the Court. The various parties interested whose rights are to be determined are the partnership trading as Auto Parts Warehouse, of which Louis Carreras was the sole owner at the time of the loss, having acquired the interest of his partner; Royal Auto Parts, Incorporated, the alleged owner of certain equipment, which corporation was controlled and in effect owned by Carreras; Hundley & Evans, a judgment creditor of that corporation; the United States, by whom tax liens against Carreras were filed prior to the date of loss; Phillip Levin, Rubin Levin and Louis Levin, trading as Philadelphia Auto Parts Manufacturing Company, of Philadelphia, Pennsylvania; and Michael Cardone, John Cardone, Daniel Cardone, Nicholas Cardone and Anthony Cardone, trading as Automotive Unit Exchange, also of Philadelphia, Pennsylvania, who claim an interest as consignors of certain stock in trade held by the partnership destroyed by fire.

In order to fix the rights of the respective parties there are two separate issues to be decided. A determination of those issues will dispose of the controversy so far as the respective parties are concerned.

1. As between the consignors of the insured goods and the Government (tax lien creditor of the insured), who should receive the proceeds of the Birmingham policy of $9,887.50.

2. As between the judgment creditor of the Royal Auto Parts, Incorporated, and the Government (tax lien creditor of Carreras, partner in the Carreras and Putney partnership, trading as Auto Parts Warehouse), who is entitled to the proceeds of the policy of $1,500 with the Insurance Company of North America.

The Birmingham policy was issued January 8, 1952, payable to Putney and Carreras, trading as Auto Parts Warehouse. This policy covered the interest of the insured in all stock in trade in the named warehouse. Fire destroyed the warehouse and all goods stored therein on July 1, 1952. Actually the goods destroyed were in the hands of insured on consignment. However, the insurance company elected to pay the full amount rather than only the interest of the insured. The agreement of consignment, later reduced to writing, was rather loose in its terms. One of the terms

was to the effect that the consigned goods be covered by insurance. There was no reference as to how or in whose name the goods were to be insured.

■ The Government contends in the light of the loose terms that the contract between consignor and consignee (now Carreras) as to the insurance was one to indemnify the consignee in case of fire and the resulting liability to the consignee in favor of the consignor. Thus the actual insurance contract would be one of re-insurance as to the consignee and the insurance company would have no privity with the consignor. In the absence of the Government's claim, as between Carreras and the consignors, who would prevail? It seems clear that the consignors would prevail as the beneficiaries of an equitable trust. Therefore it would be inequitable to allow the Government claiming through the insured to prevail over the consignors. Granting the Government's view of the situation to be correct, the equitable trust which was created would overcome any rights of the Government arising out of the contract to re-insure. Therefore, the consignors are entitled to priority over the Government as to their proportion of the insurance money. The loss was figured on the retail price of the goods. The agreement between consignor and consignee was to the effect that the consignee would get 20% of the retail price as commissions. Consequently, the Government is entitled to the 20% due the consignee and the balance of the 80% should go to the two consignors pro rata of their respective shares in the goods destroyed.

■ The Insurance Company of North America policy was issued May 7, 1955, payable to Auto Parts Warehouse. The policy was to cover the machinery used by the partnership. The partnership arrangement of Carreras and Putney was first contemplated prior to January 1, 1951. At that time the plan was to the effect that the partnership would be between Royal Auto Parts, Incorporated, and Putney. However, this was abandoned and Carreras and Putney became partners. Under the original plan the corporation as its contribution was to put up the necessary machinery. Under the actual arrangement set up the machinery was Carreras' contribution to the partnership as there is no evidence of any other type of contribution. There was alleged rent paid from the partnership to the corporation for the machinery. This was a bookkeeping transaction and amounted only to the depreciation claimed on the machinery by the corporation. On May 7, 1951, the present policy was taken out and the partnership, not the corporation, was named the insured. This policy was issued some five months subsequent to the decision that the corporation would not participate in the partnership. Thus in the light of the nominal rent and the insurance policy of May 7, 1951, I must conclude that the machinery was in fact Carreras' contribution to the partnership.

■■ Title is an illusory thing and often must be shown by the intentions of the parties. The actions in this case seem, regardless of the entries on the books of the corporation, to manifest an intention for the machinery to be Carreras' contribution to the partnership and thus title would be in the partnership. Title being in the partnership and the partnership being the insured on the policy, it follows that the Government must prevail.

■ The tax lien attached against assets of Carreras acquired at any time during the year 1951. Consequently, that lien became fixed as to the machinery when the machinery became an asset of Carreras as owner of the partnership. It likewise became fixed as to the proceeds from the insurance policy at the time such proceeds or claim thereto vested in Carreras, as surviving member of the partnership.

Counsel are requested to submit draft of proposed order providing that the consignors recover 80% of the proceeds of

the Birmingham policy and that the United States recover 20% of the proceeds of the Birmingham policy and the entire proceeds of the North American policy.