### Matter of Arthur P. JAYE, Bankrupt.
### No. B258–54.

United States District Court
D. New Jersey.
Jan. 4, 1956.

James E. Masterson, Newark, N. J., for bankrupt.

Rodman C. Herman, Newark, N. J., (Joseph S. Slowinski, Irvington, N. J., of counsel) for Chester Czyzewski, objecting creditor.

WORTENDYKE, District Judge.

Bankrupt petitions for review of an order of the referee denying his discharge on the grounds that (1) the bankrupt knowingly and fraudulently made false sworn statements in connection with the bankruptcy proceeding and (2) within the year immediately preceding the filing of the petition the bankrupt transferred property with intent to delay, hinder or defraud creditors. Bankruptcy Act, § 14, sub. c(1) and (4), 11 U.S.C.A. § 32, sub. c(1) and (4); 18 U. S.C. § 152.

In the schedules annexed to his petition in bankruptcy filed on May 24, 1954, the bankrupt denied that during the preceding year he had either repaid any loans or transferred or otherwise disposed of any property. A judgment creditor, objecting to the discharge of the bankrupt, contended that these statements were false and were knowingly and fraudulently made by the bankrupt. The creditor also claimed that the transfer of property, which he claimed the bankrupt had denied, was effected with intent to hinder, delay or defraud creditors. The referee agreed with the objecting creditor and refused to discharge the bankrupt. The bankrupt urges that the referee should be reversed.

The bankrupt concedes that he failed to disclose in his schedules that during the year immediately preceding May 24, 1954, he repaid three loans and transferred title to an automobile. But these facts alone are not sufficient cause under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., for withholding a discharge since it must be established by the objecting creditor that the false statements were knowingly and fraudulently made and that the transfer of property was accomplished with intent to delay, hinder or defraud creditors.

At the hearing before the referee on objections to discharge it clearly appeared that between May and Novem-

ber 1953 the bankrupt was making monthly payments of $20 each on a bank loan secured for the purchase of a 1940 Oldsmobile. In December 1953 the bankrupt turned the automobile in on the purchase of a 1951 Ford. The price of the Ford was $1,200 including the trade-in, and the bankrupt obtained a $400 loan from the same bank from which he had previously borrowed in connection with the purchase of the first automobile. He also procured an $800 G.M.A.C. loan. The loans and the title to both automobiles were taken in the sole name of the bankrupt. In February 1954, the mother of the bankrupt, who owned a home in which she and the bankrupt lived, made application for and received· an F.H.A. loan for $1,149.80. The bankrupt filled out the necessary application for this loan and was a co-maker on the note. The F.H.A. loan was used, not for property improvements as represented in the application, but for paying off the balance of the loans in connection with the purchase of the 1951 Ford. At the same time the bankrupt transferred title to the Ford to his mother.

It further appeared that the objecting creditor obtained a judgment against the bankrupt in July 1953 for $3,000 and that in November and December of that year this creditor was pressing for payment. In answer to the creditor's demands, the bankrupt advised that he might have to seek refuge in the insolvency laws.

At the hearing the bankrupt testified that the monthly loan repayments of $20 between May and November 1953 slipped his mind when he swore to the schedules annexed to his petition in bankruptcy. As to the payment of the other two loans, made in connection with the purchase of the 1951 Ford, and the transfer of title to his mother, the bankrupt and his mother gave testimony to the effect that the bankrupt was acting in· these transactions only as an agent for an undisclosed principal, his mother. Their explanation was that the mother, not being a wage-earner, could not obtain the necessary loans and consequently the bankrupt undertook to obtain and later repay the loans in his own name. As a necessary part of this arrangement, the bankrupt had to take title to the automobile initially in his own name. Subsequently, when the mother was able to raise other funds, title was transferred to her. In any case, the bankrupt testified that he considered the term "property" as it appeared in the bankruptcy schedules to mean only real property.

The issues as to whether the bankrupt knowingly and fraudulently swore to false statements and whether his transfer of the automobile to his mother was with intent to delay, hinder or defraud creditors turn largely upon the credibility of the bankrupt and his mother. The referee refused to believe their testimony, concluding that their explanations were devised to meet the circumstances in which the bankrupt found himself. Since he was in a position to observe them and since their testimony on its face is not completely free from inconsistencies, it cannot be said that such refusal was clearly erroneous. In the absence of clear error, the district court will accept the findings of the referee. General Order 47, 11 U.S.C.A. following § 53.

The bankrupt's explanations not being accepted, there is ample basis for concluding that he committed the acts charged by the objecting creditor. It seems most implausible that the bankrupt, who had simple but extremely troublesome financial difficulties in the year preceding the filing of his bankruptcy petition, could have through oversight failed to include in his schedules the repayment of three loans and the transfer of what seems to have been his only significant physical asset. The conclusion of the referee that he knowingly made false statements is inescapable. As to the matter of fraudulent intent, the circumstances reflected in the record are sufficient to establish not only that the bankrupt transferred the automobile in an attempt to keep it from the hands of a pressing judgment creditor but also that the omission from the schedules of

818

any reference to the loans in connection with the automobile was to prevent discovery of the prior transfer. It may be noted that before and after the transfer the bankrupt's possession and use of the automobile was the same, the bankrupt's mother not being licensed to operate a motor vehicle. Apart from the reasons for transfer of title given by the bankrupt, which the referee was entitled to refuse to accept, the record negatives the existence of any legitimate purpose which might have been accomplished by a transaction which involved a fraud upon the government in the improper use of an F.H.A. loan. The fact that the amount which a creditor might have been able to recover by levying upon the automobile was slight is, of course, immaterial. In re Feynman, 2 Cir., 1935, 77 F.2d 320.

Upon the foregoing, it cannot be said that the referee's findings as to the states of mind of the bankrupt when he transferred the automobile and when he swore to the bankruptcy schedules were clearly erroneous.

The referee's order denying a discharge is affirmed.