In the Matter of **OXFORD ASSOCIATES**, Bankrupt.

No. B-666-56.

United States District Court
D. New Jersey.
Sept. 27, 1962.

joint petition filed by it and Berkeley Arms, Inc. ("Berkeley") for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Prior to the filing of the joint petition, and on December 3, 1956, Berkeley had been adjudged bankrupt. Both corporations were controlled by the same stockholders, Nicholas Dimallo, now deceased, and Joseph Torre.

Prior to the bankruptcy proceedings, an apartment house had been built by Oxford for Berkeley. The building was completed in December, 1955, and thereafter sold by Berkeley to a third party [1]. Petitioner's claim against Oxford was based upon a profit Oxford is alleged to have made upon completion of the contract for the construction of the apartment house.

Oxford did not file an income tax return for the fiscal year ended July 31, 1956, nor did it file any returns for subsequent years. The books and records of Oxford and Berkeley could not be located. An investigation and examination of the affairs of Oxford by Internal Revenue Agent Nathan Masor resulted in the assessment of the tax in question. The information used in arriving at the ultimate assessment was obtained from a limited number of third party sources. From the information thus acquired, Oxford's taxable income for the year ended July 31, 1956, was determined to be $150,000.00, resulting in a tax of $72,500.00.

At the hearing before the Referee, petitioner, in support of its claim, put in evidence a duly authenticated copy of the assessment certificate and rested. This was sufficient to make out a prima facie case under the general rule laid down in Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

David M. Satz, Jr., U. S. Atty., Newark, N. J., Robert J. Cooney, U. S. Dept. of Justice, Washington, D. C., for petitioner.

Allan L. Tumarkin, Newark, N. J. (David M. Hoffman, Newark, N. J., on the brief), for trustee in bankruptcy.

AUGELLI, District Judge.

This matter is before the Court on petition of the United States of America ("petitioner") for review of an order of the Referee in Bankruptcy ("Referee") which disallowed petitioner's claim against Oxford Associates ("Oxford") in the sum of $72,500.00 for income taxes for the fiscal year ended July 31, 1956.

Oxford was adjudicated bankrupt on June 24, 1957, following dismissal of a

1. The sale of the building gave rise to a claim by the Government against Berkeley for $90,022.50, consisting, for the most part, of an alleged capital gains tax resulting from such sale. On motion of the trustee in bankruptcy this claim was expunged by the Referee. A petition for review was filed and came on for hearing before Judge Wortendyke. He found

that the order expunging the claim was properly entered on the basis of the testimony before the Referee. However, at the request of the Government, Judge Wortendyke remanded the matter to the Referee for the purpose of affording the Government an opportunity to submit to the Referee additional proof in support of its claim.

That case stands for the proposition that an assessment made by the Commissioner of Internal Revenue carries with it the presumption of correctness, and the burden is on the taxpayer to prove such assessment to be wrong. See also Section 6020(b) (2) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6020(b) (2). This Court does not agree with the Referee that the ruling in Welch is not applicable to tax claims in bankruptcy matters. See Paschal v. Blieden, 127 F.2d 398 (8 Cir. 1942) and in In re Gorgeous Blouse Co., 106 F.Supp. 465 (S.D.N.Y. 1952).

To overcome the prima facie case made out by petitioner, the trustee in bankruptcy examined Agent Masor as to the manner in which he arrived at the tax of $72,500.00. Masor testified that the application for the building permit filed by Berkeley showed the estimated cost of construction of the apartment house to be $1,000,000.00. Treating and accepting this as gross receipts actually received by the contractor, Oxford, the witness then estimated that Oxford made a net profit of $150,000.00 or 15% of the estimated figure of $1,000,000.00. On the basis of this calculation, the actual cost of construction to Oxford was estimated at $850,000.00. Masor admitted he had no knowledge of construction costs, but said that in the course of his work as a Revenue Agent he would on occasion examine construction companies. The Agent testified his determination of a 15% net profit was predicated on his "past experience as a Revenue Agent in ascertaining what might be the gross profit or net profit to be derived from a one job construction of this type". He also said he checked his experience with that of other Revenue Agents and that he made some local inquiries in the vicinity.

It must be admitted that the absence of records in this case made it difficult to determine whether or not Oxford had any taxable income for the year ended July 31, 1956. But notwithstanding the absence of such records, there were third party sources from which information might have been obtained concerning construction costs and related data if the attempt had been made. For example, no effort was made to communicate with any of the subcontractors, materialmen or suppliers who were directly concerned with the construction of the apartment house. The names of these creditors, with claims totalling $135,269.18, appeared on the schedules filed in the bankruptcy proceedings. An inquiry directed to these people might well have resulted in receipt of information that would furnish some factual basis for arriving at the cost of construction of the apartment house, and thus enable Masor to buttress his "estimate" with some figures. And the same is true with respect to the estimated gross contract price of $1,000,000.00 which was obtained from the application for a building permit. No check was made to determine whether or not a construction contract between Berkeley and Oxford was on file in the office of the County Clerk of Bergen County. The record reflects other instances where inquiry of third party sources might have been profitably pursued.

On the basis of the record before him, the Referee did not believe it likely that Oxford, a bankrupt corporation owing more than $150,000.00 to creditors, made any profit on the construction of the apartment house. He concluded, therefore, that the estimates made by Masor of construction cost and of net profit were mere assumptions without sufficient foundation to justify the tax in question.

The law is clear that in proceedings on petition for review of an order of a Referee, a court must accept the Referee's findings unless the same are clearly erroneous. 11 U.S.C.A. § 53, Gen. Order 47; In re Jaye, 136 F.Supp. 815 (D.C.N.J.1956).

This Court cannot say, on the basis of the entire record, that the Referee's denial of petitioner's claim was clearly erroneous. The trustee in bankruptcy, by showing the arbitrary manner in which the assessment was made, satisfied the burden of rebutting the presumption of correctness which attaches

to a tax assessment. As was stated by the court in In re Swan, 82 F.2d 160, 162 (2 Cir. 1936) the Government

" * * * produced as a witness the very man on whose investigation the assessment was made. His testimony shows that the assessment was a mere 'shot in the dark' having no foundation. In other words, the government's testimony overcame the presumption in its favor and demonstrated that the assessment was arbitrary."

Under the circumstances, the decision of the Referee in expunging petitioner's tax claim of $72,500.00 will be affirmed. Counsel for the trustee in bankruptcy, on notice to petitioner, will submit an appropriate order.