The HOME INSURANCE COMPANY,
and American Central Insurance
Company, Plaintiffs,

v.

B. B. RIDER CORPORATION et al.,
Defendants.

Civ. A. No. 261–61.

United States District Court
D. New Jersey.

Jan. 14, 1963.

458

David M. Satz, Jr., U. S. Atty., by F. Michael Caruso, Asst. U. S. Atty., and Arnold Miller, Tax Div., Dept. of Justice, for United States.

Sheldon Schachter, Newark, N. J., for Paul R. Kleinberg, Trustee in Bankruptcy of H M T Corp.

Benjamin Coe, Newark, N. J., for defendant Sarasohn & Co. and others.

Michael G. Alenick, Newark, N. J., for defendant Austin Nichols & Co., Inc.

Jacob Lubetkin, by Sherwin Drobner, Newark, N. J., for defendant M. Dietz & Sons, Inc.

James Del Mauro, by Joseph Pecora, Newark, N. J., for defendant General Home Service Ass'n.

Doyle & Galvin, Jersey City, N. J., by Joseph Cullen, for defendant B. B. Rider Corp.

Arthur W. Herrigen, Newark, N. J., for defendant Gordon Bass.

WORTENDYKE, District Judge.

The complaint in this action brings it within the jurisdiction conferred upon this Court by the provisions of 28 U.S.C. § 1335.

Some time prior to January 1, 1960 each of the two plaintiff fire insurance companies (Home and American Central) issued a fire insurance policy to H M T Corp. (T/A Jada Club).

A fire occurred on January 1, 1960 in the insured property, and the loss under each of the two fire policies was ultimately adjusted to the respective amounts of $16,250.33 under the Home policy, and $8,152.73 under the American Central policy, a total of $24,403.06.

Because of claims made by the respective defendants to these funds, the plaintiffs instituted this action for interpleader on April 7, 1961, making the insured named in the policy, and other claimants, parties defendant. The United States of America, by reason of its tax claims, intervened. Defendant H M T Corp., the insured taxpayer, was adjudicated a bankrupt on May 1, 1961 and by order of May 2, 1962, its Trustee in bankruptcy was admitted as a claimant-defendant.

By this Court's order of October 25, 1961, filed on October 27, 1961, plaintiffs were authorized to deposit the adjusted

amounts due under their two policies with the Clerk of this Court, and a counsel fee of $350 plus $57.30 costs were allowed to their attorney. There remains in the Registry of this Court the net sum of $23,995.76.

By written instrument dated January 5, 1960, signed by the President of the insured bankrupt corporation, the services of Sarasohn & Company (Ira J. Sarasohn, Roy N. Sarasohn and David E. Friedman) were retained to adjust the fire loss in consideration of an agreement by the insured to pay to said adjusters 10% of the amount of the adjusted loss when paid by the insurers. These adjusters claim a prior lien upon the insurance proceeds in the amount of $2,440.30 for their services and expenses, upon the theory that such services *created* the fund which is the subject of the present interpleader.

M. Dietz & Sons, Inc., claims as a conditional vendor of chattels to the insured, under a contract recorded April 16, 1959, by virtue of which it asserts an equitable lien against the fund in the amount of $176.00.

Defendant B. B. Rider Corp. claims priority upon the fund by virtue of its conditional sale to the insured of air conditioning equipment under contract dated June 8, 1959, upon which it secured a judgment on June 16, 1960. That claim amounts to $3,071.87.

Defendant Austin Nichols & Co., Inc., makes claim against the fund for $1,090.22 on its judgment recovered against the insured on April 7, 1960, and levy thereunder on April 8, 1960.

Defendant General Home Service Association bases its claim upon a chattel mortgage for $4,800.00 dated December 10, 1959. This claimant alleges that its interest in the fund is predicated upon an alleged "loss-payable endorsement" upon the fire insurance policies to the extent of the lien of its chattel mortgage; endorsements and chattel mortgage bearing same date.

Defendant Gordon Bass claims upon a judgment entered October 17, 1960, and execution thereunder, in the amount of $736.58.

Although an answer was filed on behalf of defendant Joseph Rilli, in which he asserts a claim in the amount of $1,750.00, for which amount the H M T Corp. executed an assignment on January 29, 1960 of the moneys due or to become due to it under the fire insurance policies, no appearance in behalf of this claimant was made when the case was moved to trial.

So also in the case of defendant Michael J. Allone, in whose answer he claims to have recovered a judgment on April 8, 1960 in the amount of $2,195.67 including costs, on which execution issued. No appearance was made in behalf of this claimant at the trial.

We need not consider defendants Samuel Ehrenkranz or Majestic Wine & Spirits, Inc., named in the complaint, as they failed to appear in the cause, no answer being filed in behalf of either.

The Government claims priority against the fund with respect to its claims for withholding, and excise taxes, aggregating $51,659.57, assessed on and prior to August 28, 1959, and has moved the Court for summary judgment to that effect, in that amount. This motion was opposed by the Trustee in Bankruptcy of taxpayer-debtor, H M T Corp., as well as by Austin Nichols, B. B. Rider, Dietz, General Home Service and Sarasohn. Because of the imminence of the trial date (scheduled for the day next succeeding that on which oral argument was heard on the motion) and because of the challenges to the amount of the Government lien, I determined that the case was appropriate for plenary trial, which was held on the appointed date.

The transcript of the pretrial conference held in this case on June 12, 1962 discloses that the only question to be decided is the "validity of the Government's priority rights."

In support of its motion for summary judgment, the Government annexed to its moving papers an affidavit by the Acting Director of Internal Revenue in Newark,

New Jersey, certifying, as of October 25, 1962, the following schedules of tax notices, payments and credits, filings of tax lien notices, and balances due, viz.:

| | Withholding Taxes | Excise Taxes | Excise Taxes |
|---|---|---|---|
| Taxable period | 4th 1/4 1955 | 5/1/54–4/30/58 | 5/1/58–12/31/58 |
| Date of assessment | 2/29/56 | 8/28/59 | 8/28/59 |
| Date first notice | 3/20/56 | 9/4/59 | 9/4/59 |
| Payments and Credits | $1,105.00 | — | — |
| Notice of Lien filed | 10/5/56 | 11/9/59 | 11/9/59 |
| Balance Due | $70.29 | $45,404.92 | $5,284.64 |

26 U.S.C. § 6321 (1945 Code) provides that the amount of any tax not paid, after demand, by a person liable to pay the same, becomes a lien in favor of the United States upon all property and rights to property belonging to the taxpayer. The following section of the Code (§ 6322) provides that the tax lien arises at the time the assessment is made, but § 6323 provides that such lien shall not be valid against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed.

█ The Trustee in Bankruptcy of the H M T Corp. contests the amount of the Government liens as reflected in the District Director's affidavit, to which reference has been made. It should be noted that the affidavit referred to was filed in this Court in support of the Government's motion for summary judgment, and, therefore, is not probative in the case as it stands in this posture. Nor did the Government introduce any official records to establish the amount of the Government liens. However, the Government, upon the trial, called one, Kaplan, an Excise Tax Agent, who conducted the investigation as a result of which the assessments were made. It is my opinion that his testimony establishes the Government lien in the amount of $45,-404.92.[1] Mr. Kaplan further testified that in the course of the investigation he had various conversations with Jerry Dimeola, an officer of H M T, who was also the manager of the Jada Club, who informed him that during the period for which the taxes were assessed the Club employed certain entertainers. From these conversations he was able to develop a picture of how the Club operated; and he used this information in conjunction with the records furnished by the accountant for the corporation in arriving at a tax assessment. It was his opinion that the entertainment utilized subjected the corporation to the 20% excise tax on such establishments, in effect during that period. Subsequently, he filled out an income tax return which Mr. Dimeola signed without objection. The Trustee argues here that the presumption of validity which attaches to a tax assessment has been dissipated by the Agent's testimony, and that the Government has failed to establish its claim. Although it is true that by adducing oral testimony disclosing the manner in which the assessment was arrived at, the Government may lose the benefit of the presumption,

[1]

"MR. MILLER (Government attorney): I show you an affidavit attached to the Government motion which indicates that for the years May 1, 1954 to April 30, 1958 a total of $45,404.92 was assessed for excise taxes. Do you recall working on this case?

"MR. KAPLAN: Yes.

"MR. MILLER: Can you recall how you computed that $45,000 figure?

"MR. KAPLIN: Well, I know that I computed it on figures supplied by the taxpayer's accountant."

In re Swan, 2 Cir. 1936, 82 F.2d 160, the evidence in this case does not impel me to that conclusion. The Trustee relies upon the case of In re Oxford Associates, D.C.N.J.1962, 209 F.Supp. 242, in which the Referee refused to allow a Government tax lien in the amount of $72,500 which refusal was affirmed by Judge Augelli of this Court. There the bankrupt was a builder who constructed an apartment house, and it was the information obtained and relied upon by the Government in determining Oxford's profit as a result of this job, that the Court found inadequate. The Agent there discovered that a building permit estimated the cost of construction of the apartment house to be a million dollars. The Government considered this amount to be that which the builder received for his services, 15% of which it estimated to be net profit, resulting in an estimated net cost of construction of $850,000. The Agent testified that he had no knowledge of construction costs, and that his use of the 15% profit factor "was predicated on his 'past experience as a Revenue Agent in ascertaining what might be the gross profit or net profit to be derived from a one job construction of this type'." p. 244. In that case, as in ours, an absence of records handicapped the Government authorities (in the case at bar the books of the taxpayer were lost in an earlier fire in December, 1958), but the Court in Oxford went on to mention a number of other avenues of investigation that might have been utilized in order to arrive at a more accurate and equitable computation. In the case at bar, it is my opinion that the Government used the best means available to it in ascertaining H M T's tax liability.

The Government relies for support of its asserted priority upon United States v. Eiland, 4 Cir. 1955, 223 F.2d 118. The lien in that case was claimed upon an indebtedness *owed to* the taxpayer by a third party for which levy was made upon the debtor. The taxpayer was adjudicated in bankruptcy, and the debtor paid the indebtedness to the trustee. Two questions were presented: (1) was the Government's lien claim defeated by failure to file notice with the County Clerk; and (2) was the Government's claim postponed to administration and wage claims in the bankruptcy. Each question was answered in the negative. The Court held that the levy made by the Government under its tax claim upon the money owed to the taxpayer by the bankrupt's debtor effected (p. 121) "what is virtually a transfer to the government of the indebtedness, or the amount thereof necessary to pay the tax, so that payment to the government pursuant to the levy and notice is a complete defense to the debtor against any action brought against him on account of the debt."

What was the right, title and interest, if any, of the insured taxpayer in the presently involved insurance policies and their proceeds prior to the fire which occurred on January 1, 1960? Each policy was a contract by the terms of which, in consideration of the premium paid by the insured, the insurer agreed to indemnify the insured against loss by fire within the period fixed by the policy. Such a loss might never have occurred; in which event there would have been no policy proceeds to which the insured might assert any right, title or interest. The taxes in question here were assessed and the notices thereof filed prior to the occurrence of the fire. The claims of Rider and Dietz, under their respective conditional sales contracts, and of General Home under its chattel mortgage, arose prior to the fire, and the interest of General Home was allegedly recognized by the insurers by endorsements upon the policies.

In construing § 6321 of Title 26, In re Halprin, 3 Cir., 1960, 280 F.2d 407, held that prior to the time when a party to a bilateral contract performs his undertaking and thereby subjects the other party to an obligation to pay for that performance as agreed, the contract is wholly executory and the promise to pay is contingent upon whatever performance was bargained for in exchange. Only by conferring an agreed equivalent benefit can the promisee acquire an enforceable

right to the promised payment. Where it is entirely uncertain whether the conditional promise to pay will ever become unqualified and enforceable, the interest of a party to the contract is purely contingent, and therefore not "property and rights to property" to which a tax lien under § 6321 could attach. United States v. Long Island Drug Co., 2 Cir. 1940, 115 F.2d 983. Until the fire occurred no lien could arise in favor either of the Government or of any other claimant upon the interest, whatever it was, of the taxpayer in either of the fire insurance policies.

■■ The tax lien statute does not *create* property rights, but merely provides for the attachment of the lien to rights created under applicable State law. United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; Wolverine Insurance Co. v. Phillips, D.C.Iowa, 1958, 165 F.Supp. 335, 353. The fire insurance policies were merely promises to indemnify upon the possible happening of a future event. No chose in action arose in favor of the insured until the fire occurred. However, prior to the fire, and while the insurance was in force, the Government had taken all steps necessary to perfect a tax lien upon *all* property of the insured. The moment the fire occurred, the agreement to indemnify embodied in the policies ripened into a chose in action in favor of the insured, which constituted "property or right to property" to which the previously inchoate tax lien immediately attached. Citizens National Trust & Savings Bank of Los Angeles v. United States, 9 Cir. 1943, 135 F.2d 527.

■■ Defendant General Home Service Association held a chattel mortgage to secure the payment of $4,800.00 on personal property of the insured which was destroyed by the fire, and it is claimed that each of the fire insurance policies bore an appropriate endorsement committing the insurer to pay, in the event of destruction by fire, proceeds of the policies to the mortgagee to the extent of its interest therein. These "loss-payable endorsements", if they existed, might constitute evidence that the fire insurance policy contracts were made, not only for the benefit of the named insured, but as well for the benefit of the chattel-mortgagee, who, when the fire occurred, would acquire a chose in action for so much of the proceeds of the policies as represented the value of the chattels constituting the security described in the mortgage. Rent-a-car Co. v. Globe & Rutgers Fire Ins. Co., 158 Md. 169, 148 A. 252; Aetna Ins. Co. v. Thompson, 68 N.H. 20, 40 A. 396. The critical issue between the Government and the mortgagee is whether the entire insurance proceeds constituted property of the insured, within the definition of 26 U.S.C. § 6321, or whether the alleged endorsements on the policies in favor of the chattel mortgagee have the effect of reducing the property rights of the insured, *pro tanto*. It is apparent that a debtor-taxpayer may prevent the attachment of Government liens by divesting himself of contingent rights to property before they actually vest, for no Government lien attaches to such contingent rights. See In re Halprin, supra, and United States v. Long Island Drug Co., supra. There appears in the New Jersey decisions, a distinction between the rights acquired by a mortgagee dependent upon a difference in insurance policy endorsement language. In Martin v. Franklin Fire Insurance Co., 1875, 38 N.J.L. 140, the Court had before it a policy of fire insurance which had written on its face, as revealed in defendants' declaration, "Loss if any, payable to Garrett G. Vreeland as mortgagee." The particular question confronting the Court was whether or not the law suit could be maintained by the mortgagor, the owner of the policy, in view of the endorsement. The Court answered in the affirmative, notwithstanding the fact that (p. 142) "the person to whom the loss is made payable be a mortgagee, (because) the contract * * * is with the owner, for the insurance of his property, and not with the mortgagee for the insurance of his interest. * * * The direction to pay the sum in which

the insurance was effected to the mortgagee, in case of a loss, is collateral to the principal contract and is not an assignment of the policy.

"The legal effect of such a clause in favor of a third person in a policy, in terms between the insurer and the owner, is that of a direction in advance as to the mode of payment, which, when made, is performance of the contract in the manner assented to by the insured, and discharges the obligation *pro tanto*."

In Reed v. Firemen's Insurance Co., E & A 1911, 81 N.J.L. 523, 80 A. 462, 35 L.R.A., N.S., 343, there was before the Court an insurance policy containing the language "Loss if any, payable to David F. and James A. Reed, mortgagees, mortgage clause attached." The Court there held: "The mortgagee clause is the contract between the insurer, and the mortgagee, quite separate from the policy, yet ingrafted upon it, and to be understood by reference to the policy which renders it certain and complete."

We are left in ignorance of the language of the mortgagee clause in either of the policies here in question, because the policies are not before the Court, nor has any secondary evidence of the terms thereof been presented. The record being devoid of proof of the language employed to describe its interest in either policy, we are unable to grant priority to the chattel mortgagee, General Home Service Association, in the policy proceeds. Accordingly, the entire proceeds of the insurance policies must be considered as vesting, at least momentarily, in the insured, at which time the Government's hovering liens immediately attached thereto.

■ On April 14, 1959 defendant-claimant M. Dietz & Sons, Inc. sold to insured-taxpayer certain store fixtures under a conditional bill of sale, by the terms of which the conditional vendee agreed to keep the chattels insured against destruction by fire. At the time of the fire, there was a balance due of $176.00 on account of the sale price, and the chattels immediately prior to their destruction were worth approximately $400.00.

On June 8, 1959, defendant-claimant B. B. Rider Corp. sold to taxpayer-insured, under a conditional bill of sale, certain air conditioning equipment, which it installed in the premises described in the insurance policies. By the terms of the conditional sale agreement, title to the property described remained in the conditional vendor until the price had been completely paid, and the vendee agreed to insure the property against loss by fire at its own expense, but in the name of the vendor. At the time of the fire there was a balance due of $3,081.87 on this conditional sale, for which B. B. Rider recovered judgment against the conditional vendee on June 16, 1960.

■ As to these conditional vendors, whose property was destroyed by fire, their priority is precluded by application of the doctrine that in order to defeat a Government tax lien, one must be both prior in time and have a perfected, choate lien. In United States v. New Britain, 1954, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520, the Court enunciated the principle that a choate lien arises "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." The conditional vendors have no such perfected liens against the insurance proceeds where the property, title to which they retained pending payment, was destroyed. See In re Cecire, 9 N.J.Misc. 977, 156 A. 418, where the Court held that insurance proceeds do not replace the property destroyed so as to maintain a creditor's priority established as to such property. B. B. Rider contends, however, that it has an equitable lien which arose upon the sale of its property to the insured, at which time the vendee agreed to carry fire insurance on the property in question. Assuming the existence of such lien, it is not entitled to priority over that of the Government. United States v. Morrison, 5 Cir. 1957, 247 F.2d 285. B. B. Rider additionally argues that it falls within the rule of law enunciated in Insurance Company of North America

v. Putney, E.D.Va.1955, 136 F.Supp. 894. In that case, as in the one before me, the proceeds of two fire insurance policies were deposited with the Court pending resolution of the rights of the various parties interested therein. One policy was issued on January 8, 1952, payable to Putney and Carreras t/a Auto Parts Warehouse, and covered the interest of the insured in all stock in trade in a specified warehouse. That warehouse was destroyed, with all of the goods stored therein, on July 1, 1952. The goods stored in the warehouse were not owned by the insured, but were there on consignment, and the parties had agreed that the consignee would insure the goods. In considering the respective rights to the insurance proceeds, as between the Government's tax lien (the date of which is not disclosed in the opinion) and that of the consignor, the Court held the lien of the latter to be superior, upon the ground that as between Carreras and the consignor the latter would prevail, because the Government stood "in the shoes of" Carreras. Although the last cited case is factually suggestive of that at bar, its factual differences impel me to a different legal conclusion than that reached by the Court in the Putney case.

■ Defendant-claimants Austin, Nichols & Co. Inc. and Gordon Bass recovered judgments against the taxpayer-insured on April 7 and October 17, 1960, respectively, and execution was issued and levy made under each judgment upon the insured's right, title and interest in the proceeds of the fire insurance policies. These claimants are unable to achieve priority because of the well-established rule "the first in time is the first in right." United States v. New Britain, supra, at p. 85, 74 S.Ct. at p. 370.

The lien of the United States, having attained perfection prior to the debtors' ensuing bankruptcy, does not clothe the Trustee with rights superior to those of the United States. United States v. Eiland, supra.

■ In the course of asserting its claims against the insurers upon the policies, the insured employed the services of Messrs. Sarasohn and Friedman, public adjusters, and, on January 5, 1960, agreed to pay, for their services in adjusting the loss, 10% of the amount recovered. Clearly, at the time these adjusters were employed, the insured had already lost any right over the policy proceeds inasmuch as the Government's lien had attached thereto. However, the adjusters argue that because it was through their efforts that the fund was created, they are entitled to first priority, citing Filipowicz v. Rothensies, E.D.Pa. 1942, 43 F.Supp. 619, 624. In that case, an attorney's lien was given priority over a federal tax lien upon a fund "upon the well recognized principle that an attorney has a lien on a fund which has been created as a result of his efforts in litigation." (Citing Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184.) In Filipowicz, the attorney had filed proof of claim in favor of taxpayer in bankruptcy proceedings involving taxpayer's debtor. Three dividends in the bankruptcy proceedings were received by the attorney, and upon them the Collector made levy under its lien for taxes due from the attorney's client, the creditor of the bankrupt. This case is distinguishable upon the ground that Sarasohn & Company obtained no lien, but merely a contract right. A debtor may not impair the rights of the United States established through perfection of a tax lien which has already attached to the debtor's property, by undertaking performance of a contractual obligation.

The Government having established its priority right to an amount in excess of the total on deposit in the Registry of this Court, i. e., $45,404.92 (footnote 1 supra), it is entitled to judgment in the amount of the fund. This obviates the necessity of establishing priority rights of the inferior claimants.

An order in accordance with the views herein expressed may be submitted.