**CITY OF VERMILLION, SOUTH DAKO-
TA, a municipal corporation, Plaintiff,**

v.

**STAN HOUSTON EQUIPMENT CO., a
corporation, et al., Defendants.**

Civ. No. 70–115S.

United States District Court,
D. South Dakota, S. D.

April 18, 1972.

Martin Weeks, of Bogue & Weeks, Vermillion, S. D., for plaintiff.

Everett A. Bogue, of Bogue & Weeks, Vermillion, S. D., for defendants Stan Houston Equipment Co., Holter, Montgomery and Odenbrett, Christensen, and National Bank of S. D.

Deming Smith, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant Egger Steel Co.

Lee McCahren, Vermillion, S. D., for defendant Williams.

Joe W. Cadwell, Trustee in Bankruptcy, Sioux Falls, S. D., pro se.

James W. Donahoe, Vermillion, S. D., for defendant Fullerton Lumber Co.

R. D. Hurd and David R. Dienapp, Asst. U. S. Attys., Sioux Falls, S. D., for defendant Treasury Dept. of the U. S., I.R.S.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The City of Vermillion (hereinafter referred to as City) began a declaratory judgment action against the defendants in the First Judicial Circuit of the State of South Dakota on July 30, 1970. The action sought to have the Court determine to whom the City should pay the proceeds of a public improvement contract between the City and one Laverne Odegaard, d/b/a Odegaard Construction of Vermillion (hereinafter referred to as Contractor), who has filed a bankruptcy petition. The United States Attorney on behalf of the Internal Revenue Service (hereinafter referred to as I.R.S.) removed the case to this Court under 28 U.S.C.A. Sec. 1442.

The Contractor and the City entered into a public improvement contract for the construction of tennis courts on September 10, 1969. On October 15, 1969, the Contractor assigned his interest in the proceeds of that contract to the National Bank of South Dakota, Vermillion Branch, (hereinafter referred to as Bank) to secure any present debts owed to or future advances from the Bank. This assignment was accepted by the City on October 17, 1969, and filed with the Clay County [1] Register of Deeds on November 28, 1969.

The I.R.S. served on the City auditor a notice of levy against the proceeds of the contract between the City and the Contractor for $3,700.19 on December 1, 1969. On December 15, 1969, the I.R.S. filed with the Clay County Register of Deeds a notice of tax lien for $3,675.91 upon all the property and rights to property of the Contractor.

On December 30, 1969, Fullerton Lumber Company garnished the contract proceeds in the hands of the City for debts owing by the Contractor which were not related to the public improvement contract. This garnishment was dismissed with prejudice by the state circuit court on November 19, 1970.

Public improvement liens for services and materials were filed with the City auditor as follows: Ludey Williams, d/b/a Ludey's Ready Mix Service, January 7, 1970—$6,250.02; Vermillion Lien Insurance Agency, January 7, 1970—$435.40 (now claiming only $272.40); George S. Christensen, January 7, 1970—$748.28; Egger Steel Company, January 8, 1970—$6,046.50; Stan Houston Equipment Company, January 19, 1970—$303.67; and the National Bank of South Dakota, August 6, 1970—$2,596.47.

The Contractor filed a bankruptcy petition on January 15, 1970. On February 12, 1970, the I.R.S. released its levy of December 1, 1969. The I.R.S. served a new notice of levy on May 12, 1970, against money owed the Contractor by the City, for $7,107.06. Final demand was made upon the City by the I.R.S. on July 23, 1970.

The City accepted the tennis courts on July 20, 1970, at which time it owed the Contractor $22,497.10 for work done. The City has paid $19,654.22 to one of the defendants, the National Bank of South Dakota, Vermillion Branch, to be held, without interest, in trust for those creditors (defendants) this court finds have priority. The City has withheld an additional $2,842.88 owing under the contract. The City claims this sum to be a setoff in the following amounts: services rendered to the Contractor not related to the public improvement contract—$137.32; a debt owed by the Contractor to Ludey Williams as a subcontractor on work done for the City not related to the contract here in question

[1.] Clay County is the county of the debtor's (Contractor's) residence.

—$1,350.06; money paid to other contractors to complete the tennis courts—$1,355.50.

The Employment Security Department of the state of South Dakota claims that the Contractor owes $89.44 in unpaid taxes which it is now demanding be paid from the contract proceeds.

■■ Since an agency of the United States, the I.R.S., is a party to this action, federal law as to priority of claims must govern. United States v. Equitable Life Assurance Society of the United States, 384 U.S. 323, 331, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966). The applicable federal law is 26 U.S.C.A. § 6323(a) & (h). Under that section we must look to state law in determining if a party is entitled to priority as a holder of a security interest, a mechanic's lienor or a judgment lien creditor. State law also applies in determining property ownership. Aquilino v. United States, 363 U. S. 509, 514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

## MECHANICS LIENORS

Statutory liens are excepted from the provisions of the Uniform Commercial Code (S.D.C.L. Ch. 57 (1967)) by S.D. C.L. Sec. 57–35–3 (1967) (U.C.C. Sec. 9–102(2)). Therefore, S.D.C.L. Ch. 5–22 (1967) granting public improvement liens to certain suppliers is applicable.

Egger Steel Company met all of the requirements of S.D.C.L. Ch. 5–22 (1967) and was granted summary judgment on June 25, 1971.

A public improvement lien has no validity unless an "action to enforce" it is commenced within 30 days from the acceptance of the work for which the lien is claimed. S.D.C.L. Sec. 5–22–7 (1967). The public body in control of money due or owing under a public improvement contract can commence an action to "determine" such liens before paying any claimant. S.D.C.L. Sec. 5–22–4 (1967). That section also allows "(a)ny person claiming a lien, if he be a defendant, (to) set forth such lien by answer." However, if the lien claimant chooses to enforce his lien by answer, he must answer within the 30 days provided by S.D.C.L. Sec. 5–22–7 (1967).

■ The City accepted the work of the Contractor on July 20, 1970. Stan Houston's only action to enforce was on April 23, 1971, when it filed its answer. Ludey Williams' only action to enforce was on April 22, 1971, when he filed his answer. George Christensen's only action to enforce was on August 31, 1970, when he filed his answer. Since no action was taken by these defendants within 30 days after acceptance of the work by the City, any liens which they may have had were discharged by virtue of S.D.C.L. Sec. 5–22–8(2) (1967).

■ The Vermillion Lien Insurance Agency claims a lien for the premium on the Contractor's performance bond and liability insurance. This defendant is not a person within S.D.C.L. Sec. 5–22–1 (1967) who furnished "skill, labor, materials, machinery, or supplies, services, or equipment, in connection with the carrying on of any work of construction, alteration, or repair of any public improvement. . . . "

In addition the Vermillion Lien Insurance Agency did not comply with the 30 day provisions of S.D.C.L. Secs. 5–22–4 & 7 (1967) since the only action to enforce the lien was taken by answer on August 31, 1970. Therefore, any lien which it may have had was discharged by virtue of S.D.C.L. Sec. 5–22–8(2) (1967).

■ The Employment Security Department of the state of South Dakota claims a lien under S.D.C.L. Secs. 5–18–16 & 17 (1967). Those sections require a public corporation on a public improvement contract not to pay the contractor until he obtains a certificate from the Employment Security Department of the state of South Dakota that the department has been paid all contributions and interest due it by the Contractor. It does not provide for any lien in favor of the Employment Security

Department of the state of South Dakota against the proceeds of the public improvement contract.

## SECURITY INTERESTS

■ The City's claim for an equitable setoff is partially based on debts owed the City and Williams by the Contractor on claims totally unrelated to the public improvement contract here in question. Although under S.D.C.L. Sec. 57–35–17 (1967) (U.C.C. Sec. 9–104(i) ), setoffs are specifically excluded from the secured transactions filing provisions of the Uniform Commercial Code (S.D.C.L. Chs. 57–35 to 57–39 (1967) ), the City was unable to cite any law allowing such a setoff priority over secured claims. Since state law does not give the setoff priority it is precluded under 26 U.S.C. A. Sec. 6323(a).

The City remains liable under the public improvement contract for the entire amount of the alleged setoff ($2,842.88). All of the parties except the United States stipulated that the City paid $1,355.50 to other contractors in order to complete the tennis courts and that that sum was no longer owing the Contractor. However, the failure of the United States to so stipulate left that fact in issue. At trial the City offered no evidence to prove such payments. The record shows only that the City owed the Contractor for the amount of $22,497.10 for work done. Thus the amount allegedly paid to other contractors to complete the tennis courts has not been proved and is not a proper setoff.

■ The Bank's claim for a public improvement lien fails since they did not furnish "skill, labor, materials, machinery, or supplies, services, or equipment" under S.D.C.L. Sec. 5–22–1 (1967). They merely furnished the Contractor with money which could not be traced to the public improvement contract at trial. Additionally the Bank did not comply with the 30 day provisions of S.D.C.L. Secs. 5–22–4 & 7. The only action to enforce the lien that the bank took was by answer on September 18, 1970.

Under Aquilino v. United States, 363 U.S. 509, 514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), state law applies as to property ownership. The Bank claims that under Hartford Accident and Indemnity Co. v. State, 85 S.D. 608, 187 N.W.2d 663 (1971), South Dakota law is that from the date of the assignment the Contractor had no property interest upon which the I.R.S. could attach a lien.

■ The *Hartford* case involved an assignment of the rights and obligations of a contract. Hartford had guaranteed the performance of a defaulting contractor and was forced to complete the project. Therefore, at the date of the assignment Hartford had the property right to the proceeds of the contract. This situation is specifically excepted from the secured transactions provisions of the Uniform Commercial Code—Article 9, S.D.C.L. Sec. 57–35–14 (1967) (U. C.C. Sec. 9–104(f) ), since it is a "transfer of a contract right to an assignee who is also to do the performance under the contract."

Uniform Commercial Code Sec. 9–104, Comment 6, states:

> In general . . . security transfers of . . . contract rights . . . are within the Article (9) . . . . Paragraph (f) excludes from the Article (9) certain transfers of such intangibles which, by their nature, have nothing to do with commercial financing transactions.

The assignment in the Hartford case had nothing to do with commercial financing transactions. However, the assignment here by the Contractor to the Bank was solely a commercial financing transaction covered by S.D.C.L. Sec. 57–35–3 (1967) (U.C.C. 9–102(2) ) as an assignment for security. The Bank was attempting to take a security interest in the public improvement contract to secure future advances under S.D.C.L. Secs. 57–36–5 to 10 (U.C.C. 9–204). Such a security interest would take priority even against a trustee in bankruptcy if properly perfected. 4 R. Anderson,

712

Anderson on the Uniform Commercial Code Sec. 9–204:17 (2d ed. 1971).

■ S.D.C.L. Sec. 57–38–3 (1967) (U.C.C. 9–401(1) (c) alternative 2) requires that a financing statement covering a security interest in contract rights be filed with the secretary of state to be perfected. The Bank only filed with the Clay County Register of Deeds. 26 U. S.C.A. Sec. 6323(a) & (h) (1) provides priority for a security interest if it has "become protected under local law against a subsequent judgment lien arising out of an unsecured obligation . . . " S.D.C.L. Secs. 57–37–1 & 3 (U.C.C. 9–301(1) (b) & (3) ) subordinates an unperfected security interest to the interests of a lien creditor. A trustee in bankruptcy is a lien creditor from the date of the filing of the bankruptcy petition. See United States v. G. P. Fleetwood & Co., 165 F.Supp. 723, 725 (W.D.Pa.1958); R. Anderson, Anderson on the Uniform Commercial Code Secs. 9–301:10 & 9–301:11 (2d ed. 1971); 11 U.S.C.A. Sec. 110(c). The Bank's security interest has no priority since it did not become protected under local law against the subsequent lien of the trustee in bankruptcy.

■ The Bank contends that the assignment is excepted from the Article 9 secured transactions provisions of the Uniform Commercial Code under S.D.C. L. Sec. 57–37–4(5) (1967) (U.C.C. 9–302(1) (e) ) if it "does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor." Here the Bank was taking an assignment of the entire contract proceeds. The evidence showed that this was the Contractor's only contract at the time of the assignment of any significance. The Bank argues that since advances of only $2,596.47 were made, it was not a significant part of the Contractor's contract rights. The Court does not agree. Uniform Commercial Code Sec. 9–302, Comment 5, says the "purpose of subsection (1) (e) exemptions is to save from *ex*

*post facto* invalidation casual or isolated assignments . . .." That comment goes on to say "(a)ny person who regularly takes assignments of any debtor's accounts should file." Surely the Bank does not fit this exception. The Bank regularly takes assignments and this was not a casual or isolated transaction.

There is no showing in the evidence that any of the creditors had actual knowledge of the Bank's assignment. Therefore, S.D.C.L. Sec. 57–38–4 (1967) (U.C.C. 9–401(2)), which provides for priority against creditors who had knowledge of a misfiled security interest, is not applicable. Thus the trustee in bankruptcy is not held to have knowledge of the assignment under S.D.C.L. Sec. 57–37–3 (1967) (U.C.C. 9–301(3)) since not all the creditors had actual knowledge.

## INTERNAL REVENUE SERVICE LIEN

The United States is given a lien upon "all property and rights to property, whether real or personal," belonging to the nonpaying taxpayer under 26 U.S.C. A. Sec. 6321. The I.R.S. lien can be defeated only by those creditors who have perfected prior to the filing of the lien under 26 U.S.C.A. Sec. 6323(a) & (h).

■ Notice of a $3,675.91 tax lien was properly filed with the Clay County Register of Deeds upon all of the Contractor's property on December 15, 1969. The Contractor's bankruptcy petition was filed on January 15, 1970. 11 U.S. C.A. Sec. 110(c) makes the trustee in bankruptcy a judgment lien creditor from the date of bankruptcy. Thus under 26 U.S.C.A. Sec. 6323(a) the tax lien of the I.R.S. is valid as against the trustee in bankruptcy as a judgment lien creditor only for $3,675.91, the amount stated in the lien notice given prior to January 15, 1970, the date of the filing of the petition of bankruptcy.

■ 26 U.S.C.A. Secs. 6321 to 6326 provide the necessary steps for the I.R. S. to perfect a tax lien. 26 U.S.C.A. Secs. 6331 to 6344 provide the necessary

steps for the I.R.S. to levy upon property for the collection of unpaid taxes. 26 U.S.C.A. Sec. 6323(f) requires the filing of a notice of a lien to obtain priority over certain secured creditors. The I.R.S. filed the notice of lien for $3,675.91, thus perfecting that claim against all subsequent creditors. However,. as to the additional claims of the I.R.S., only a notice of levy was filed. Thus the I.R.S. was relying on the automatic lien provisions of 26 U.S.C.A. Secs. 6321 & 6322 to give them priority over general creditors as to the remainder of their claim. However, the notices of levy on December 1, 1969, and May 12, 1970, were not sufficient to serve as notices of liens under 26 U.S.C.A. Sec. 6323(a) & (f).

■ The fact that the taxpayer's right to the proceeds of the contract was dependent upon his performance of the contract and acceptance by the City does not mean that the proceeds were not property or rights to property of the taxpayer under 26 U.S.C.A. Sec. 6321. Seaboard Surety Co. v. United States, 306 F.2d 855, 859 (9th Cir. 1962); Home Ins. Co. v. B. B. Rider Corp., 212 F.Supp. 457, 462 (D.C.N.J.1963). The taxpayer had more than a mere contingent right to the proceeds of the contract.

31 U.S.C.A. Sec. 191 provides that whenever "any person indebted to the United States is insolvent . . . debts due the United States shall be first satisfied . . . ." There is no question that under 11 U.S.C.A. Sec. 21, the taxpayer was insolvent on January 15, 1970. The only remaining issue is whether the priority given the trustee in bankruptcy by 26 U.S.C.A. Sec. 6323(a) is subordinate to the priority given the United States by 31 U.S.C.A. Sec. 191. The United States Supreme Court stated in United States v. Key, 397 U.S. 322, 332, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970) that 31 U.S.C.A. Sec. 191 "must apply according to its terms except

where expressly superseded, or where excluded by a later enactment 'plainly inconsistent' with it." The *Key* case held that 31 U.S.C.A. Sec. 191 is applicable to tax claims of the United States in corporate reorganization proceedings under Chapter X of the National Bankruptcy Act, 11 U.S.C.A. Secs. 501–676. In the *Key* case there were no priorities given by the Bankruptcy Act which were plainly inconsistent with 31 U.S.C.A. Sec. 191.

■ 26 U.S.C.A. Sec. 6323(a) was enacted long after 31 U.S.C.A. Sec. 191 and is plainly inconsistent with it. Congress could not have intended any other purpose for 26 U.S.C.A. Sec. 6323(a) than to give certain creditors priority over unfiled claims of the United States. Therefore, 31 U.S.C.A. Sec. 191 does not apply here and does not defeat the claim of the trustee in bankruptcy [2] under 26 U.S.C.A. Sec. 6323(a). See In re Tennessee Central Ry., 316 F.Supp. 1103, 1106–08 (M.D.Tenn.1970).

## JUDGMENT LIEN CREDITORS

The evidence at trial failed to show that any amount of Fullerton Lumber Company's claim was secured or arose out of the public improvement contract here in question. Any status that Fullerton may have had as a judgment lien creditor was lost when its garnishment was dismissed with prejudice on November 19, 1970.

As explained above, the trustee in Bankruptcy under his preferred status in 11 U.S.C.A. Sec. 110(c) as a judgment lien creditor is entitled to the contract proceeds after the claim of Egger Steel Company for $6,046.50 and the claim of the I.R.S. for $3,675.91 are satisfied. 26 U.S.C.A. Sec. 6323(a). All of the other claims have no priority and must be satisfied through bankruptcy proceedings.

This memorandum decision shall constitute the findings of fact and conclusions of law as required by Rule 52 of

2. The remainder of the I.R.S. claim for unpaid taxes will still have priority over the remaining general creditors under the

Bankruptcy Act. 11 U.S.C.A. Sec. 104 (a).

the Federal Rules of Civil Procedure upon a trial to the court without a jury.

The City of Vermillion and the United States entered a stipulation, with permission of the Court, by which the United States admits that the City paid $1,-355.50 to other contractors to complete the public improvement contract. The City is, therefore, relieved of that obligation and their setoff in that amount is allowed.

The City was also allowed to make an additional showing that it had deposited an additional $1,487.38, the remaining amount of its alleged setoff, in trust with the defendant National Bank of South Dakota, Vermillion Branch.

The date of the assignment by Odegaard to the National Bank of South Dakota was October 15, 1969. S.D.C.L. Secs. 57–40–1 and 2 (1967) provide that all transactions that are entered into after July 1, 1967, are covered by the provisions of the Uniform Commercial Code. Therefore, S.D.C.L. Sec. 43–42–4 (1967) has no application to this case.