**In the Matter of HANCOCK TRUCKING, INCORPORATED, Debtor.**

**UNITED STATES of America, Appellant,**

**v.**

**Sheldon A. KEY, Trustee, Appellee.**

**No. 16857.**

United States Court of Appeals Seventh Circuit.

Feb. 27, 1969.

See also D.C., 263 F.Supp. 544.

K. Edwin Applegate, U. S. Atty., Indianapolis, Ind., Mitchell Rogovin, Asst. Atty. Gen., Karl Schmeidler, Attorney, Tax Division, Washington, D. C., Department of Justice, Lee A. Jackson, Crombie J. D. Garrett, Attorneys, Department of Justice, Washington, D. C., for appellant.

R. Stanley Lawton, Sigmund J. Beck, Edward B. Hopper, II, Indianapolis, Ind., Bamberger & Feibleman, Indianapolis, Ind., of counsel, for appellee.

Before FAIRCHILD and KERNER, Circuit Judges, and GORDON, District Judge.[1]

1. The writer of this opinion is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

MYRON L. GORDON, District Judge.

This appeal by the United States involves an unpaid federal tax claim in the stipulated amount of $375,386.55 and is taken from the order of the district court confirming an amended plan of reorganization under Chapter X of the Bankruptcy Act.

On May 3, 1954, the debtor filed a voluntary petition for reorganization in the district court in which it alleged its inability to meet its debts as they became due, and in which it requested the appointment of a trustee to operate its business and manage its property. The United States filed proofs of claim for federal withholding, excise and employment taxes.

The trustee filed an amended plan of reorganization on June 23, 1967. The plan provided that the tax claims were to be satisfied by payment of 10% of the amount of the claims in cash within six months from confirmation, and by payment of the balance, without interest, in 78 equal monthly installments. The installment payments were to be secured by an assignment of the note and chattel mortgage on the debtor's operating rights, which documents were signed by Hennis Freight Lines, Inc., the purchaser of said operating rights. The amount of the note is substantially in excess of the amount owed in connection with the federal tax claims. The unsecured creditors were to be paid 20% of their claims in cash within six months of confirmation; certain wage claimants and also certain state and local taxes were to be paid in full. This amended plan did not contemplate the continued existence of the debtor.

Previously, the district court had approved the agreement between the debtor and Hennis Freight Lines, Inc., whereby Hennis agreed to purchase all of the debtor's operating rights for an amount not to exceed $935,000, payable $300,000 within 90 days of approval of the sale by the Interstate Commerce Commission, and the balance payable in 78 equal monthly installments. The I.C.C. hearing examiner recommended that the transaction be approved, subject, however, to certain modifications in the operating rights. The I.C.C. issued its order on March 11, 1965 approving the hearing examiner's findings.

The United States filed a timely notice of rejection of the amended plan on November 20, 1967. Following a hearing, the district court issued an order confirming the plan; it found that the debtor was insolvent; the plan was fair, equitable and feasible; and that the plan afforded adequate protection to the United States and to the state and local tax creditors by the assignment of the note and chattel mortgage executed by Hennis. The United States now appeals from the order of confirmation.

The issue presented on this appeal may be stated as follows: In a corporate reorganization under Chapter X, is a plan which provides for payment of the government's tax claims by installment payments without interest "fair and equitable", or is the government, in addition to such payments, entitled to receive its funds prior to the time payment is made to lesser ranking creditors?

Section 199 of the Bankruptcy Act (11 U.S.C. § 599) provides that

"If the United States is a secured or unsecured creditor or stockholder of a debtor, the claims or stock thereof shall be deemed to be affected by a plan under this chapter, and the Secretary of the Treasury is hereby authorized to accept or reject a plan in respect of the claims or stock of the United States. If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes or customs duties (whether or not the United States has any other interest in, or claim against the debtor, as secured or unsecured creditor or stockholder), *no plan which does not provide for the payment thereof shall be confirmed* by the judge except upon the acceptance of a lesser amount by the Secretary of the Treasury certified

to the court * * *." (emphasis added)

Section 216(7) (11 U.S.C. § 616), provides in part as follows:

"A plan of reorganization under this chapter

" * * *

"(7) shall provide for any class of creditors which is affected by and does not accept the plan by the two-thirds majority in amount required under this chapter, adequate protection for the realization by them of the value of their claims against the property dealt with by the plan and affected by such claims, either as provided in the plan or in the order confirming the plan * * * (d) by such method as will, under and consistent with the circumstances of the particular case, *equitably and fairly provide such protection* * * *." (Emphasis added.)

In addition, it is stated in § 221 (11 U.S.C. § 621) that the judge shall confirm a plan "if satisfied" that the provisions of § 199 have been complied with and the plan is "fair and equitable, and feasible".

The government contends that these sections, when read together, support the position that a plan which requires the government to wait 6½ years without interest for full payment and which permits, in the interim, payment to lesser ranking creditors, is not fair and equitable. The trustee maintains that the plan involved here adequately assures payment in full of the government's tax claim in a fair and equitable manner and urges that this is all that the applicable statutes require.

Section 199 does not prescribe a particular method of payment. It merely states that the district court shall not confirm a plan "which does not provide for the payment" of the government's tax claim, unless the government accepts a lesser amount. Nor do §§ 216(7) (d) or 221 adopt a specific method of payment; rather, they are couched in terms of "equity" and "fairness". As stated in

6A Collier, Bankruptcy, ¶ 10.17, pp. 490–491 (14th Ed. 1965), in speaking of § 216(7) (d):

"It has been said that these methods, properly speaking, are not 'methods' at all, but merely empower the judge, who must approve and confirm the plan, to approve any means of treatment which under the particular circumstances 'equitably and fairly' affords adequate protection to the dissenters."

Unlike the foregoing statutes, other chapters of the Bankruptcy Act do expressly provide that the government shall be paid in cash. For example, see § 64(a) (4) [11 U.S.C. § 104(a)].

The government stresses the importance of R.S. § 3466 (31 U.S.C. § 191) and contends that it entitles the United States to immediate payment. Section 3466 provides that

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, *the debts due to the United States shall be first satisfied;* and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." (emphasis added)

The government urges that § 3466 applies in Chapter X matters, which are not conventional bankruptcy proceedings. United States v. Anderson, 334 F.2d 111 (5th Cir. 1964); Lowden v. N. W. National Bank, 298 U.S. 160, 163, 56 S.Ct. 696, 80 L.Ed. 1114 (1936). There are a number of cases in which the government's priority under § 3466 has been recognized in equity receivership proceedings, but such cases did not involve Chapter X. Price v. United

States, 269 U.S. 492, 499, 46 S.Ct. 180, 70 L.Ed. 373 (1926); United States v. Butterworth-Judson Corp., 269 U.S. 504, 513, 46 S.Ct. 179, 70 L.Ed. 380 (1926); Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621 (1929); New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933).

A case in which the court did apply § 3466 to a Chapter X matter is United States v. Anderson, 334 F.2d 111 (5th Cir. 1964). By a divided court, the court of appeals for the fifth circuit decided that the government's *non-tax* debts were to have priority. However, the court did not specify whether such non-tax claims were entitled to "payment in full" or to "first satisfaction".

■ It seems to us that if § 3466 is applied to a Chapter X plan, the "fair and equitable" provisions of §§ 216(7) (d) and 221 are effectively contradicted. Section 199 bars the court from confirming a plan "which does not provide for the payment" of tax claims—unless the Secretary of the Treasury assents. Section 216(7) states that a plan under Chapter X shall "equitably and fairly provide" adequate protection for "any class of creditors which is affected by and does not accept the plan". Section 221 provides that the judge shall confirm the plan if the requirements of § 199 have been complied with and the plan is "fair and equitable, and feasible". In our opinion, these three latter sections govern tax claims of the United States in Chapter X proceedings.

The specific provisions of §§ 199, 216 (7) (d) and 221 of Chapter X cannot be fairly construed to require, as a matter of law, that a plan insure the government total satisfaction of its tax claims *before* other creditors receive anything, as a condition precedent to the plan's being "fair and equitable".

Within Chapter X, §§ 199, 216 and 221 are inter-related statutes and part of a studied statutory plan. Section 199 outlines the nature of the government's tax claim "priority", and the two other sections establish an equitable standard to govern the method of payment. If, as the government would have us hold, § 3466 creates an absolute right to first payment in addition to full payment, there would be little need for §§ 199, 216(7) and 221. These sections apply specifically to Chapter X proceedings and should control over the more general and conflicting direction of § 3466. Baltimore Nat. Bank v. State Tax Commission of Maryland, 297 U.S. 209, 215, 56 S.Ct. 417, 80 L.Ed. 586 (1936) and cases cited therein.

In the case at bar, the approved plan contemplates that the United States will be paid in full, and the record supports the trial court's conclusion that the plan affords reasonable protection to the government. The district court had the benefit of its own fact-finding, as well as that of the I.C.C., with respect to the value of the operating rights and the ability of the buyer to make payments under the plan. These factual determinations have not been specifically challenged here.

We hold that the trial court did not err in permitting lesser ranking creditors to receive payment simultaneously. Under the plan, the government does not surrender its right to full payment.

■ The government maintains that it is receiving only a "discounted value" of its claim because it does not receive interest, and it must wait 78 months for full satisfaction. The absence of interest is not a controlling factor here, for the law is well settled that the government is not entitled to post-petition interest on its tax claims in these proceedings. United States v. Edens, 189 F.2d 876 (4th Cir. 1951), aff'd per curiam, 342 U.S. 865, 72 S.Ct. 357, 96 L.Ed. 682 (1952); City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949); In re Kerber Packing Co., 276 F.2d 245 (7th Cir. 1960).

The record sufficiently supports the district judge's exercise of the discretion vested in him under Chapter X. The order of the district court confirming the amended plan is affirmed.