## UNITED STATES *v.* KEY, TRUSTEE IN BANKRUPTCY

No. 402.   Argued January 21, 1970—Decided March 30, 1970

*Lawrence G. Wallace* argued the cause for the United States.   On the brief were *Solicitor General Griswold, Assistant Attorney General Walters, Peter L. Strauss,* and *Crombie J. D. Garrett.*

*Sigmund J. Beck* argued the cause for respondent. With him on the brief was *Edward B. Hopper II.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In this case the United States challenges the treatment given to its claim for unpaid taxes against an insolvent

corporation in reorganization under Chapter X of the Bankruptcy Act, 11 U. S. C. §§ 501–676. Under the reorganization plan approved by the District Court, the debtor, Hancock Trucking, Inc., will sell its chief asset, its Interstate Commerce Commission operating rights, to Hennis Freight Lines, Inc., for $935,000. The sale contract provides for a $300,000 down payment, with the balance to be paid in 78 monthly installments. Under the reorganization plan, the down payment will be used to satisfy certain wage and state and local tax claims in full, to satisfy 20% of the claims of the unsecured creditors, and to satisfy about 10% of the United States' tax claim of $375,386.55. The remainder of the United States' claim will be paid out of the monthly installments. The plan, an atypical one for a corporate reorganization, does not contemplate the continued existence of the debtor as a going concern, but amounts in substance to a liquidation.

The United States objects to that aspect of the plan that provides for partial or complete payment of the claims of unsecured creditors and state and local government units before full payment of the federal tax claims. This, the Government urges, violates the command of § 3466 of the Revised Statutes, 31 U. S. C. § 191, that "[w]henever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied." Respondent urges that § 3466 does not apply to Chapter X proceedings, but that the United States is entitled only to "payment" of its tax claim, as provided by § 199 of the Bankruptcy Act, 11 U. S. C. § 599.

The Court of Appeals accepted respondent's theory, and affirmed the order of the District Court approving the plan. 407 F. 2d 635 (C. A. 7th Cir. 1969). We granted certiorari, 396 U. S. 874 (1969), and we reverse.

Since the earliest days of the Republic, § 3466 and its predecessors have given the Government priority over all other claimants in collecting debts due it from insolvent debtors.[1] The present statute has existed almost unchanged since 1797,[2] and its historical roots reach back to the similar priority of the Crown in England, an aspect of the royal prerogative, founded upon a policy of protecting the public revenues.[3] The same policy underlies the federal statute, *United States* v. *State Bank of North Carolina,* 6 Pet. 29, 35 (1832), and it is established that the terms of § 3466 are to be liberally construed to achieve this broad purpose. *Beaston* v. *Farmers' Bank,* 12 Pet. 102, 134 (1838); *Bramwell* v. *United States Fidelity Co.,* 269 U. S. 483, 487 (1926).

Section 3466 applies literally to the situation here. The debtor is concededly insolvent, and it is established that a tax debt is a "debt due to the United States" within the meaning of the statute. *Price* v. *United States,* 269 U. S. 492, 499 (1926). No provision of Chapter X explicitly excepts corporate debtors in reorganization from the application of § 3466, and so the only remaining question is whether the legislative scheme established in Chapter X, either by logical inconsistency or other manifestation of congressional intent, implies such an exception.

In approaching a claim of an implied exception to § 3466, we start with the principle, noted above, that the statute must be given a liberal construction consonant with the public policy underlying it. Applying that principle to an earlier claim that a statutory scheme implicitly excluded § 3466, this Court held that "[o]nly

---

[1] See, *e. g.,* Act of July 31, 1789, § 21, 1 Stat. 42; Act of August 4, 1790, § 45, 1 Stat. 169.

[2] See Act of March 3, 1797, § 5, 1 Stat. 515, as amended by Act of March 2, 1799, § 65, 1 Stat. 676.

[3] See 33 Hen. 8, c. 39, § 74 (1541); 13 Eliz. 1, c. 4 (1570).

the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." *United States* v. *Emory,* 314 U. S. 423, 433 (1941).

Here the Court of Appeals discerned an intent not to apply § 3466 to Chapter X proceedings from § 199 of the Bankruptcy Act, which forbids the approval of any reorganization plan which does not provide for the "payment" of taxes or customs due to the United States, unless the Secretary of the Treasury accepts "a lesser amount." [4] The Court of Appeals further supported its inference of exclusionary intent from §§ 216 (7) and 221 of the Act, 11 U. S. C. §§ 616 (7) and 621. Section 216 (7) provides that where a class of creditors dissents from a reorganization plan, the District Court shall provide "adequate protection for the realization by them of the value of their claims against the property" in any of four ways, the last and most general of which is by "such method as will, under and consistent with

---

[4] Section 199 provides:

"If the United States is a secured or unsecured creditor or stockholder of a debtor, the claims or stock thereof shall be deemed to be affected by a plan under this chapter, and the Secretary of the Treasury is authorized to accept or reject a plan in respect of the claims or stock of the United States. If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes or customs duties (whether or not the United States has any other interest in, or claim against the debtor, as secured or unsecured creditor or stockholder), no plan which does not provide for the payment thereof shall be confirmed by the judge except upon the acceptance of a lesser amount by the Secretary of the Treasury certified to the court: *Provided,* That if the Secretary of the Treasury shall fail to accept or reject a plan for more than ninety days after receipt of written notice so to do from the court to which the plan has been proposed, accompanied by a certified copy of the plan, his consent shall be conclusively presumed." 11 U. S. C. § 599.

the circumstances of the particular case, equitably and fairly provide such protection." Section 221 merely sums up the applicable tests for a valid reorganization plan by providing that "[t]he judge shall confirm a plan if satisfied that" § 199 has been complied with and that "the plan is fair and equitable, and feasible."

The Court of Appeals reasoned from these provisions to the implied exclusion of the operation of § 3466 as follows:

> "Within Chapter X, §§ 199, 216 and 221 are inter-related statutes and part of a studied statutory plan. Section 199 outlines the nature of the government's tax claim 'priority,' and the two other sections establish an equitable standard to govern the method of payment. If, as the government would have us hold, § 3466 creates an absolute right to first payment in addition to full payment, there would be little need for §§ 199, 216 (7) and 221. These sections apply specifically to Chapter X proceedings and should control over the more general and conflicting direction of § 3466." 407 F. 2d, at 638.

In our view these provisions are not logically inconsistent with the terms of § 3466, nor would they be rendered redundant if the older statute applied, nor does their language or legislative history reveal a purpose incongruous with its application.

In the first place, § 216 (7) has nothing to do with the priorities of different classes of claimants under Chapter X. That section merely provides that where an affected class of creditors (and here the United States itself constitutes the whole of such a class) dissents from a plan, their claims are to be dealt with in one of the four ways specified, one of which is that those claims must be disposed of "equitably and fairly."

This Court has long held that these words, along with the words "fair and equitable" in § 221, in no way authorize a District Court to ignore or erode priorities otherwise granted by law, and it follows that this language cannot be taken to exclude by implication an explicit statutory priority, such as that granted the United States by § 3466. In short, the words "fair and equitable" in Chapter X are terms of art, and no plan can be "fair and equitable" which compromises the rights of senior creditors in order to protect junior creditors. *Case* v. *Los Angeles Lumber Co.*, 308 U. S. 106, 115–116 (1939); *Consolidated Rock Co.* v. *Du Bois*, 312 U. S. 510, 527–529 (1941).

We turn then to the argument upon which respondent chiefly relies for his claim that § 3466 does not reach to Chapter X proceedings—the alleged inconsistency between application of the "first satisfied" requirement and the terms and purposes of § 199. As already noted, § 199 provides that the United States shall have "payment" of its tax claims in Chapter X proceedings unless the Secretary of the Treasury accepts "a lesser amount." Respondent argues and the Court of Appeals held that this establishes by negative implication that Congress did not mean the United States to be able to insist upon the more onerous remedy of payment first in time.[5]

---

[5] The Government argues in the alternative that even if § 3466 does not apply to claims against debtors in Chapter X, the plan here is defective even under the § 199 requirement of "payment" alone, since the deferment of payment of the Government's tax claim while the cash flow from the installment contract is used to satisfy the claims of lower ranking creditors means that the Government is receiving a "lesser amount," which § 199 in its terms contrasts with "payment," than what it would receive if it had first claim on all cash as it came in. The argument is premised on the fact that the Government cannot collect post-petition interest on its claim. *City of New York* v. *Saper*, 336 U. S. 328 (1949); *United States* v. *Edens*, 189 F. 2d 876 (C. A. 4th Cir. 1951), aff'd

As a matter of logic, we see no inconsistency between a requirement of payment and a requirement of first satisfaction. Congress surely could have provided that the United States receive payment out of a limited fund at the expense of other claimants, and quite consistently provided that when the wherewithal to make such payment became available in installments over time the United States should also have the right to claim the first of those installments and each succeeding one until its debt was satisfied.[6] Separate provisions to this effect in the same statute could certainly be read in harmony with each other, and there is no reason why § 3466 should not be read to supplement the requirement of payment contained in § 199 in the same fashion.

Nor is § 199 redundant if § 3466 applies in Chapter X proceedings on the ground that a requirement of first satisfaction necessarily implies a requirement of payment. Section 3466 applies only to insolvent debtors.[7]

---

*per curiam,* 342 U. S. 912 (1952). Because of our determination that § 3466 applies here and requires payment first in time, we need not reach this contention.

[6] In the normal Chapter X reorganization no provision need be made for priority in time of different claims. Claimants receive debt or equity interests in a going concern in the usual situation, and the priority of one claimant over another means only that if there is insufficient going-concern value to satisfy both claims, the claimant with priority must receive value equivalent to his full claim if the other claimant is to receive anything. Here a second sense of priority is involved: when cash becomes available to pay off outstanding claims only over a period of time, the claimant with "priority" in this second sense receives his cash first in time; the nonpriority claimant may receive full payment, but receives it later. In its literal language—"first satisfied"—§ 3466 provides this kind of priority, and respondent has not argued that it should not be so construed if it applies here.

[7] It seems to have long been assumed that the term insolvent in § 3466 meant insolvent in the bankruptcy sense, and this Court clearly so held in *United States* v. *Oklahoma,* 261 U. S. 253, 260–261 (1923).

Yet Chapter X proceedings are not open merely to corporations that are insolvent, in that their liabilities exceed their assets, but also to those that are solvent in the bankruptcy or asset-liability sense and yet are unable to meet their obligations as they mature. Bankruptcy Act § 130 (1), 11 U. S. C. § 530 (1). Thus § 199 does not merely give the Government rights already granted by implication in § 3466, but extends the Government's priority, for tax claims at least, to solvent corporations in Chapter X reorganization.

Thus, on the face of the statute, no inconsistency arises from applying both § 3466 and § 199 to Chapter X proceedings, much less the "plain inconsistency" required if respondent is to prevail under the test of *United States* v. *Emory, supra.* That in itself strongly suggests that § 3466 should apply here, and our examination of the background and legislative history of § 199 and of Chapter X generally does not reveal a contrary intent on the part of Congress.

Before the reorganization legislation of the 1930's, the principal method of reorganizing corporations that were unable to meet their debts was the equity receivership. This judge-made device was designed to preserve the debtor business as a going concern by cancelling claims against it, in return for which cancellation the claimants received debt or equity interests in a new corporation, which then acquired the assets of the old corporation in a judicial sale. See T. Finletter, The Law of Bankruptcy Reorganization 1–17 (1939). By 1926, it was established that § 3466 applied to give the United States an absolute priority for payment of debts due it from insolvent corporations in equity receivership. *Price* v. *United States,* 269 U. S., at 502–503; and see Blair, The Priority of the United States in Equity Receiverships, 39 Harv. L. Rev. 1 (1925).

In 1933, Congress enacted § 77 of the Bankruptcy Act, 47 Stat. 1474, providing a statutory procedure for the

reorganization of railroads. Section 77, as well as later corporate reorganization statutes discussed below, was designed to follow the general format of the equity receivership. As one of the early commentators on the federal statutes has noted, "[t]he principles of the equity receivership underlie nearly every substantive provision of the [reorganization acts]." Finletter, *supra,* at 3. These statutes were not, of course, mere codifications of the law governing equity receiverships. They were designed in part to correct abuses and inefficiencies that had existed under the prior regime. *Duparquet Co.* v. *Evans,* 297 U. S. 216, 218–219 (1936). However, the problems of the equity receivership that led to the legislative intervention did not include the Government's priority under § 3466, a relatively uncontroversial aspect of the receivership procedure.

Nothing in § 77 casts any doubt on the continued priority of the United States under § 3466. Indeed the only provision in the new statute affecting the claims of the United States was § 77(e), which provided in pertinent part:

> "If the United States of America is directly a creditor or stockholder, the Secretary of the Treasury is hereby authorized to accept or reject a plan in respect of the interests or claims of the United States." 47 Stat. 1478.

The purpose of this provision was to overcome the effect of two prior rulings of the Attorney General that the Secretary of the Treasury lacked authority to compromise claims of indebtedness owed to the Government by the railroads, 33 Op. Atty. Gen. 423 (1923), 34 Op. Atty. Gen. 108 (1924).[8]

---

[8] See Senate Committee on the Judiciary, Criticisms and Suggestions Relating to H. R. 14359 and S. 5551, Amending the Bankruptcy Act 19–20, 72d Cong., 2d Sess. (Comm. Print. 1933).

In 1934, Congress enacted § 77B of the Bankruptcy Act, 48 Stat. 911, which provided a reorganization scheme for corporations generally, closely modeled on the railroad reorganization scheme of § 77; § 77B (e)(1) granted the Secretary of the Treasury power to compromise federal claims, in language almost identical with that of § 77 (e). 48 Stat. 918. There is no language in the statute, and nothing in its history, to suggest any intention to alter the established priority of the United States under § 3466.

In 1935, the Secretary of the Treasury called the attention of Congress to the fact that the courts were construing § 77B (e)(1) to include the United States among the general creditors in reorganization proceedings, so that plans disapproved by the Secretary for failure to satisfy a federal claim could nevertheless be confirmed if the necessary majority of general creditors approved. S. Rep. No. 953, 74th Cong., 1st Sess. (1935). The Secretary proposed an amendment, which, after some weakening in the House, see S. Rep. No. 1386, 74th Cong., 1st Sess. (1935), was adopted.[9]    49 Stat. 966

---

[9] The Secretary had proposed that he be given a veto over plans that failed to provide for "payment" of *any* federal claim. See S. Rep. No. 953, *supra*. The House imposed the "payment" requirement only upon tax and customs claims, possibly intending to leave the Government in the position of a general creditor with respect to other claims, see S. Rep. No. 1386, *supra*, and this was the form in which the amendment was adopted. Section 199 preserves this apparent distinction between tax and other claims, see text at n. 4, *supra*. However the courts, relying on the strong presumption against implied exceptions to § 3466, have not treated the Government as a general creditor in its nontax claims, but rather have held that it has priority under § 3466. *United States* v. *Anderson*, 334 F. 2d 111 (C. A. 5th Cir. 1964); *In re Cherry Valley Homes, Inc.*, 255 F. 2d 706 (C. A. 3d Cir. 1958); *Reconstruction Finance Corp.* v. *Flynn*, 175 F. 2d 761 (C. A. 2d Cir. 1949).

If, as appears from the present case, § 3466, if applicable, may, in some instances, give the Government greater protection than

(1935). In its relevant provisions, the amendment was identical with present § 199, and the 1938 revisions which culminated in the replacement of § 77B by present Chapter X did not affect it.

Thus § 199 is derived from an enactment designed to grant the Government the power to compromise its claims against debtors, and an amendment designed to ensure priority for federal claims over the claims of general creditors. Nothing in this background lends any support to respondent's claim that the draftsmen of Chapter X meant to provide an exception to the operation of § 3466 for reorganization proceedings under the new statute. Indeed the established practice of applying § 3466 to equity receiverships, the acknowledged predecessor of the Chapter X proceeding, combined with the failure to indicate in any way an intent to alter that practice in the new statutes, supports the conclusion that Congress affirmatively meant § 3466 to apply to statutory reorganization.[10]

As we noted at the outset, § 3466 must apply according to its terms except where expressly superseded, or where excluded by a later enactment "plainly inconsistent" with it. Here the statute literally applies, and no plain inconsistency with the scheme of Chapter X appears. The terms of § 3466 are clearly not satisfied by the reorganization plan here in question, which provides payment in part to general creditors and other nonpreferred claimants[11] before satisfaction of the federal tax

_____

§ 199, it would be anomalous to deny that protection to Government tax claims while granting it to nontax claims, since Congress clearly intended that tax claims should have greater protection.

[10] The leading authorities agree that § 3466 applies to Chapter X proceedings. Finletter, *supra*, at 388–393; 6A Collier on Bankruptcy 269 n. 11 (14th ed. 1969).

[11] This case does not raise the question, never decided by this Court, whether § 3466 grants the Government priority over the prior specific liens of secured creditors. See *United States* v. *Gilbert Associates*, 345 U. S. 361, 365–366 (1953).

claim. Therefore the judgment upholding the plan must be reversed, and the case remanded to the Court of Appeals for further proceedings consistent with this opinion.

*Reversed.*

MR. JUSTICE DOUGLAS, concurring.

I join the opinion of the Court. As it holds, the Chandler Act provides the standard for treatment of claims of the United States as "a secured or unsecured creditor" of the debtor. Those are the words of § 199, 52 Stat. 893, 11 U. S. C. § 599. Section 199 goes on to provide that "no plan which does not provide for the payment" of the claims of the United States for taxes or customs duties shall be "confirmed" by the judge, "except upon the acceptance of a lesser amount by the Secretary of the Treasury."

The question therefore is what kind of "payment," as used in § 199, the claim of the United States must receive in a Chapter X proceeding.

There is no doubt but that the claim of the United States has priority by reason of § 3466 of the Revised Statutes, 31 U. S. C. § 191.

Section 216 of the Chandler Act provides the standards for dealing with the priorities among creditors. Section 216 (7) says that where "any class of creditors" affected by the plan does not accept the plan, those claims can be dealt with in several ways, including a method which "equitably and fairly" protects them. And § 221 (2) of the Act provides that the judge shall confirm the plan if satisfied that it is "fair and equitable, and feasible."

The words "fair and equitable" are words of art; we have made unmistakably clear that compromising the rights of senior creditors to protect junior creditors is not "fair and equitable" treatment. *Case v. Los Angeles Lumber Co.,* 308 U. S. 106, 115–116; *Consolidated Rock*

*Co.* v. *Du Bois,* 312 U. S. 510, 527–529. We said in the *Du Bois* case:

> "[I]t is plain that while creditors may be given inferior grades of securities, their 'superior rights' must be recognized. Clearly, those prior rights are not recognized, in cases where stockholders are participating in the plan, if creditors are given only a face amount of inferior securities equal to the face amount of their claims. They must receive, in addition, compensation for the senior rights which they are to surrender. If they receive less than that full compensatory treatment, some of their property rights will be appropriated for the benefit of stockholders without compensation. That is not permissible." *Id.,* at 528–529.

The present plan is likewise infirm because it provides junior creditors with immediate, partial payment, while making the United States with a prior claim accept delayed and therefore discounted payment of its claim with all the attendant risks. If the United States is to forgo the right to be paid out of the first available funds, it must receive equivalent compensation in return. The Court of Appeals thought that it contradicted § 216 and § 221 to apply § 3466 to a Chapter X plan. Today we take the contrary view. Section 3466 is relevant in defining the priority; § 216 and § 221 are relevant in providing how that priority shall be honored.