512 F.Supp. 1331 (1981)
CONSOLIDATED RAIL CORPORATION, Plaintiff,
United States of America, Plaintiff-Intervenor,
v.
Leslie R. HINDS et al., Defendants.
Civ. A. No. 81-2.
Special Court Regional Rail Reorganization Act of 1973.
May 1, 1981.
*1332 Harry A. Rissetto, Washington, D. C. (Morgan, Lewis & Bockius, Washington, D. C., Thomas E. Reinert, Jr., Washington, D. C., of counsel), for plaintiff.
Robert A. Sedler, Detroit, Mich. (Harold M. Provizer, Southfield, Mich., of counsel), for defendants.
Raymond M. Larizza, Dept. of Justice, Washington, D. C. (Thomas S. Martin, Acting Asst. Atty. Gen., and Sandra M. Schraibman, Atty., Dept. of Justice, Washington, D. C., of counsel), for plaintiff-intervenor United States.
Before FRIENDLY, P. J., and WISDOM and THOMSEN, JJ.
FRIENDLY, Presiding Judge:
This is an action filed on March 16, 1981, by Consolidated Rail Corporation (Conrail) against Leslie R. Hinds and four other defendants (sometimes referred to hereafter as the Michigan action plaintiffs). The latter, four of whom are residents of Michigan, have brought an action against Conrail in the District Court for the Eastern District of Michigan, Civil No. 81-70591 (hereafter the Michigan action). All the Michigan action plaintiffs alleged that they were former employees of the Penn Central Railroad; that they were members of unions having collective bargaining agreements with Penn Central which provided certain income protection; that after April 1, 1976, they became employees of Conrail; that each was a "protected employee", as defined in § 501(3) of the Regional Rail Reorganization Act of 1973 as amended and was entitled to the protection afforded by § 505, particularly the monthly displacement allowance provided by § 505(b); and that they are now classified as nonoperating employees (one of them being a maintenance-of-way employee) pursuant to the amendment of § 505(b) effected by § 501 of the Staggers Rail Act of 1980, 94 Stat. 1895, 1948. The Michigan action plaintiffs sought to sue on behalf of themselves and all others similarly situated.
The gravamen of the complaint in the Michigan action is this: Section 505 of the Regional Rail Reorganization Act began by providing in subsection (a) that a protected employee whose employment was governed by a collective bargaining agreement could not, except as explicitly provided, be placed in a worse position with respect to compensation, fringe benefits, rules, etc. The chief means of accomplishing this for protected employees who continued to be employed by Conrail was § 505(b) which, in effect, provided that any such employee who was adversely affected as a result of changes brought about by the operation of Conrail would receive a "monthly displacement allowance" (MDA). Broadly speaking this equalled the difference between the employee's new compensation and what he had received during the 12 months preceding February 26, 1975, adjusted to reflect subsequent general wage increases. Conrail was to be responsible for the payment of the MDAs and other allowances, and Congress appropriated $250,000,000 to a special Regional Rail Transportation account to that end, § 509. This was expected to provide for all expenditures until the year 2021 when the last eligible Conrail employee would retire. Instead, because of the small proportion of protected employees who accepted the alternative lump sum separation allowance of $20,000 provided in § 505(e), the $250,000,000 fund was exhausted by 1980. Some 13,000 employees were claiming MDAs and Conrail was spending $5,200,000 a month in satisfaction of such claims. Conrail together with the Federal Railroad Administration sought a new appropriation together with an amendment to the existing method of calculating the MDA. Whereas this had previously been *1333 computed on a uniform basis for all employees, the amendment provided different bases for the four generic classes of railroad employees, to wit, management employees, operating employees, nonoperating employees and maintenance-of-way employees. The formula for management employees was left unchanged; although the formula for operating employees was slightly changed, the complaint in the Michigan action alleges that the adverse effect would not be significant. However, for the maintenance-of-way and nonoperating employees, overtime was to be eliminated from the determination of the protected level of compensation. The Staggers Act also changed the base period for the calculation of benefits to the 12 months preceding January 1, 1975 for maintenance-of-way employees and to the 12 months preceding September 1, 1979 for nonoperating employees. Allegedly it was represented to Congress that these changes would practically eliminate MDAs to protected nonoperating and maintenance-of-way employees, and the appropriation was estimated on that basis. The Staggers Rail Act of 1980 adopted these recommendations.
The complaint in the Michigan action alleged that since the effective date of the Act  in this instance October 1, 1980, see § 710(a), the level of MDAs paid to management and operating employees has remained virtually unchanged, whereas few, if any, nonoperating or maintenance-of-way employees have been entitled to MDAs. The complaint alleged that this reclassification is "patently arbitrary and irrational and deprives the non-operating employees and the maintenance-of-way employees of the equal protection of the laws guaranteed by the Fifth Amendment's Due Process Clause." The prayer for relief sought a declaratory judgment of unconstitutionality of the classification of protected employees made by the Staggers Rail Act of 1980, a mandatory injunction requiring Conrail "to administer the program of income protection for CONRAIL employees, ... in accordance with the requirements of the Constitution of the United States"; an order directing Conrail to present a plan whereby all protected employees would be treated on an equal basis but subject to a reduction of 25%, representing the difference between the aggregate appropriation for employee income protection made by the Staggers Act as against the Act prior to amendment; a provision whereby upon the presentation of the plan and its approval by the court, Conrail should recompute the amounts by which each protected employee would have been entitled had the plan been in effect as of October 1, 1980, and make payments accordingly; and a preliminary injunction requiring Conrail to make payments of MDAs as provided in the prior law without regard to the provisions of the Staggers Act pending decision of this case.
Conrail's complaint in this court does not deal with the merits of the Michigan action. Rather Conrail's case is that the Michigan action was brought in the wrong court. It relies on § 209(e)(1) of the Regional Rail Reorganization Act, which provides, in pertinent part:
(e) ORIGINAL AND EXCLUSIVE JURISDICTION  (1) Notwithstanding any other provision of law, any civil action
* * * * * *
(B) challenging the constitutionality of this Act or any provision thereof;
* * * * * *
shall be within the original and exclusive jurisdiction of the special court.
The complaint requests us to issue a preliminary and permanent injunction. We set a briefing schedule designed to lead up to oral argument on April 28, 1981. Meanwhile Judge Gilmore, in the Eastern District of Michigan, has courteously deferred proceedings in the Michigan action.
On March 24, 1981, the Michigan action plaintiffs filed a motion to dismiss this action for want of jurisdiction and a supporting memorandum. Conrail responded with an opposing memorandum and a motion for a preliminary injunction, to both of which the Michigan action plaintiffs replied. On April 15, 1981, the United States moved for leave to intervene as a plaintiff pursuant to *1334 F.R.Civ.P. 24(b). It also moved for a preliminary injunction and for summary judgment granting a permanent injunction. At the hearing on April 28, 1981, we granted the motion of the United States for leave to intervene and advised the parties that since the question presented was solely one of law, we were ordering the trial of the action on the merits to be advanced and consolidated with the hearing on the application for a temporary injunction, F.R.Civ.P. 65(a)(2).
The provision of the Staggers Rail Act of 1980 which plaintiffs assert to be unconstitutional was couched as an amendment to § 505(b) of the Regional Rail Reorganization Act and the new language thus constitutes a "provision" of the Act. The Michigan action is thus within the letter of § 209(e)(1)(B) vesting exclusive jurisdiction in this court. The Supreme Court has repeatedly emphasized that courts are bound to look first to the language of the statute, see, e. g., Browder v. United States, 312 U.S. 335, 338, 61 S.Ct. 599, 601, 85 L.Ed. 862 (1941); United States v. Kahn, 415 U.S. 143, 151, 94 S.Ct. 977, 982, 39 L.Ed.2d 225 (1974), and when the language is as clear as here to apply it unless doing so would reach an absurd result or unless the structure and underlying purpose of the statute or the legislative history strongly indicate otherwise, see, e.g., United States v. American Trucking Association, 310 U.S. 534, 543-44, 60 S.Ct. 1059, 1063-1064, 84 L.Ed. 1345 (1940); United States v. Key, 397 U.S. 322, 324-25, 90 S.Ct. 1049, 1051-1052, 25 L.Ed.2d 340 (1970); United States v. Rutherford, 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979).
One hardly needs to go beyond mere statement to conclude that concentrating the initial decision of constitutional attacks on the Act in this court produces no absurd result, as a literal reading would have done in, say Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), or, to take a more recent example, J.C. Penney Co. v. C.I.R., 312 F.2d 65 (2 Cir. 1962). While we agree with the Michigan action plaintiffs that a judge of the District Court for the Eastern District of Michigan is entirely competent to make the initial determination of the constitutionality of the amendment to § 505(b) effected by the Staggers Rail Act, he is no more competent than this court of three judges.[1] Indeed, in the 39 years from August 1937, 50 Stat. 751, until August, 1976, 90 Stat. 1119, a date subsequent to enactment of the amendment to § 209(e) with which we are here concerned, 28 U.S.C. § 2282 would have required a court of three judges in any action to declare a Congressional statute unconstitutional. Further, if either a district court or this Court should declare a part of the Rail Act unconstitutional, direct appeal would lie to the Supreme Court, 45 U.S.C. § 719(e)(3), Rail Act, § 209(e)(3). If a district court should reject a constitutional challenge, appeal as of right would lie to the appropriate court of appeals, 28 U.S.C. §§ 1291 and 1292(a)(1), and its decision would then be reviewable by the Supreme Court on certiorari, 28 U.S.C. § 1254; if we should sustain the constitutionality of a challenged provision, our decision is immediately subject to Supreme Court review on certiorari, Rail Act, § 209(e)(3). The omission of a layer of appellate review in these circumstances scarcely renders concentration of initial jurisdiction in this Court absurd, indeed it promotes speedy disposition of the controversy.
We likewise perceive no inconsistency between reading § 209(e)(1)(B) to mean what it plainly says and the purposes and structure of the Rail Act. It may be, as the Michigan action plaintiffs contend, that the prime reason for vesting this court with exclusive jurisdiction over constitutional challenges to the Act was to prevent delay in consummation of the Final System Plan (FSP). That, however, does not create the inconsistency needed to reject the plain *1335 meaning of the words Congress used. This Court can now discharge the duty imposed by § 209(e)(1)(B), five years after consummation of the FSP, as effectively as it could have done before  much as the members of the Court may wish that they were relieved of this added burden. Insofar as the Michigan action plaintiffs suggest that a literal reading of § 209(e)(1)(B) might require this Court to be kept in perpetual existence, the obvious answer is that when our other tasks have been completed or so nearly completed that Congress no longer perceives us as serving a useful purpose, it can then provide as it wishes with respect to future challenges to the constitutionality of provisions of the Act.
The references to legislative history by the Michigan action plaintiffs are equally unpersuasive. It is true that, as stated in Consolidated Rail Corp. v. Illinois, 423 F.Supp. 941, 949 (Sp.Ct.1976), in conference certain subsections of § 209(e) appearing in the House and Senate bills were "pruned by adding the requirement ... that the suit be one challenging some action of the United States Railway Association, or seeking relief against USRA, rather than, for example, against ConRail, an interested solvent transferee, or a `financially responsible person'". However, no change was made in the portion of the Senate Bill which added § 209(e)(1)(B) granting this court exclusive jurisdiction over any action "challenging the constitutionality of this Act or any provision thereof", see Report of Senate Committee on Commerce on S.2718, No. 94-499, 94th Cong., 1st Sess. (1975) at 260, U.S.Code Cong. & Admin.News 1976, 14 and the bill as enacted went beyond the nearest counterpart in the House bill which was limited to an action "for a declaratory judgment of the unconstitutionality of any part of this Act." See Report of the Committee on Interstate and Foreign Commerce on H.R. 10979, H.R.Rep. No. 94-725, 94th Cong., 1st Sess. (1975) at 40. The provisions on exclusive jurisdiction of the House bill that were eliminated as "of no concern to the central functions of the special court under the Rail Act of 1973, as amended, Report of the Committee of Conference on S.2718, H.R. Rep.No. 94-781, 94th Cong., 2d Sess. (1976) at 188," related, in the main, to challenges regarding specific pieces of property. It would be hard to say that Congress did not regard as "central" a subject which it thought worthy of singling out as a separate subsection of § 209(e)(1). Rather, as Judge Wisdom said in Consolidated Rail Corp. v. Illinois, supra, 423 F.Supp. at 949, "The limitations on exclusive jurisdiction imposed in Conference express Congress's view of the Special Court's `central function'". Indeed, as the United States urges, if Congress meant our exclusive jurisdiction to be limited to challenges that would interfere with implementation of the FSP, the matter would have been adequately covered by § 209(e)(1)(A) and (C), and there would have been no need for § 209(e)(1)(B).
Finally, so far as precedent goes, the only decision that has thus far interpreted § 209(e)(1)(B), Commonwealth of Pennsylvania v. I.C.C., 535 F.2d 91, 93 (D.C.Cir. 1976), is in accord with the views here expressed.
The Court thus feels bound to deny the defendants' motion to dismiss and rather, exercising the powers conferred upon us by § 209(g), to enter an order granting summary judgment permanently enjoining the Michigan action plaintiffs from prosecuting the Michigan action. We trust that the parties will be able to agree on the terms of an order. If not, this may be settled on five days notice.
NOTES
[1] In fact this court has been required to familiarize itself with the labor protection provisions of the Act in connection with arguments being made with respect to the position of the railroads that in the absence of the Act they could have sold large portions of the conveyed lines for continued rail use.