IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 17, 2006 Session

# IN RE:  ESTATE OF JAMES W. FORD, M.D.

**A Direct Appeal from the Probate Court for Shelby County**
**No. C-5408     The Honorable Robert Benham, Judge**

---

**No. W2005-01194-COA-R3-CV - Filed May 5, 2006**

---

This is the second appeal of this probate case in which this Court is asked to determine whether the Appellant's claim against the decedent's estate should be treated as a verified claim under the Claims Act, T.C.A. §30-2-306 et seq., as the trial court found, and controlled by the authorities therein, and then to determine the priority of Appellant's claim as against the Internal Revenue Service/Appellee's claim against the estate for decedent's unpaid taxes.  We find that Appellant's claim is a verified claim against the estate and, as such, is subject to the Claims Act. Pursuant to both the Claims Act, T.C.A. §30-2-317, and the Federal Insolvency Act 31 U.S.C. §3713, the IRS's claim is prime.  Affirmed.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

James S. Strickland, Jr., of Memphis, Tennessee and Keith Jordan of Nashville, Tennessee for Appellant, David S. Weed

Ruby S. Wharton of Memphis, Tennessee and Kathleen N. Gomes of Memphis, Tennessee for Appellee, Estate of James W. Ford, M.D.

John A. Nolet, Attorney (pro hac vice), Tax Division, Department of Justice, Washington, D.C.; Jimmy L. Croom, Assistant U. S. Attorney, Jackson, Tennessee, for Appellee, The United States Internal Revenue Service

## OPINION

A full recitation of the background facts is contained in this Court's opinion in ***Summers v. Estate of Ford***, 146 S.W.3d 541 (Tenn. Ct. App. 2004) ("***Ford I***").  For purposes of this second appeal, we will briefly review the material facts. Dr. James W. Ford ("Ford") founded the Children's Palace Learning Academy ("CPLA"), which consisted of four daycare centers for underprivileged

children. In 1994, a corporate charter for CPLA was filed with the Secretary of State pursuant to the Nonprofit Corporations Act, T.C.A. §48-60-105. In addition, in 1994, Ford, on behalf of CPLA, applied for a license to run the daycare centers and for a financial grant from the Tennessee Department of Human Services ("DHS"). DHS issued the license and made payments to CPLA totaling approximately $10.5 million from May 1994 through November 2001. *Ford I* at 552-54.

Despite his filing for nonprofit status, Ford did not treat CPLA as a separate corporation. Rather, Ford ran CPLA as a proprietorship reporting CPLA's business activities for federal tax purposes on his own amended individual income tax returns. *Id.* at 548-49. In addition, Ford converted many of CPLA's monies to his personal use, including purchasing real property, stock, personal life insurance, furnishings, and other properties (many of which were titled in his name personally). *Id*. at 577-79. In 1997, the Secretary of State administratively dissolved CPLA's corporate charter due to its failure to file an annual report as required by law.

Ford died on November 27, 2001. Following the commencement of this probate action, the probate court, on March 19, 2002, granted the Estate's request seeking authorization for the co-executrices (Ford's sisters) to continue operation of CPLA's daycare centers under the court's supervision. *Id.* at 543-45. On May 31, 2004, the Attorney General ("AG"), *ex rel*. the State of Tennessee and CPLA, filed a "Verified Claim Against Estate" in the amount of $10,536,403.52.

On June 17, 2002, the Estate filed a detailed Exception to the AG's Claim, alleging, *inter alia*, that CPLA had never been a valid nonprofit corporation and that Ford had run CPLA as a sole proprietorship. On August 16, 2002, the AG also filed an action in the Chancery Court of Davidson County, seeking judicial dissolution of CPLA on the grounds of misappropriation and waste of nonprofit assets, and the appointment of a receiver to oversee operation of the daycare facility. *Id*. at 561. On August 20, 2002, the chancery court issued an order appointing David Weed ("Receiver," or "Appellant") as Receiver. The order, however, was held in abeyance pursuant to a joint order of the Davidson County Chancery Court and the Shelby County Probate Court entered on September 10, 2002. *Id.*

On December 17, 2002, the probate court issued a memorandum opinion and order. As relevant to the instant proceedings, the probate court ruled that CPLA is a not-for-profit corporation under Tennessee law, that the daycare business and other specific business property used in its operation, "including the tangible assets, streams of income from the State, the goodwill, and the things listed as business assets," belonged to CPLA, while other property acquired by Ford and now in the possession of his Estate (i.e. "real estate, bank stocks, individual stocks, and furnishings") were not subject to the AG's claim regardless of the fact that such property may have been acquired in part with checks drawn on CPLA accounts. *Id.* at 562-69. The probate court specifically held that this other property was not held by the Estate in a constructive trust for the benefit of CPLA. The probate court found that Ford had operated CPLA in good faith, albeit in a disorganized, nonbusiness-like manner, that Ford had no notice of an adverse claim, that there was no indication of fraud or other reason to impose a constructive trust, and that the CPLA monies received by Ford represented repayments of loans or compensation to him. *Id*.

Both the AG and the Estate appealed from the probate court's order. On March 17, 2004, this Court issued its opinion in **Ford I**. Although this Court upheld the lower court's finding that CPLA was a nonprofit corporation, we determined that the probate court erred in allowing the co-executrices of the Estate to continue operating CPLA, to wit:

> [W]e hold that the probate court's orders allowing for the continuation of business under the direction of the Co-Executrices and the authority and supervision of the probate court are hereby reversed. These orders are in direct opposition to the statutory authority vested in the Receiver and authority granted to him by Order of the Davidson County Chancery Court. In addition, the probate court's effort to convert the structure of CPLA to an LLC is impractical insomuch as CPLA's licenses and properties may not be transferred to these new entities. We also find that the Receiver, pursuant to the authority given him by statute and by the Davidson County Chancery Court, should be substituted for, or joined with, the AG in its Claim against the Estate, and that he should, under that same authority, be given access to any and all records compiled on behalf of, or by, the daycare centers, both prior to and after the opening of the Estate....

*Id*. at 574

In addition, this Court concluded that the probate court was correct in finding that daycare assets, including tangible and intangible business assets, are assets of CPLA, and we ordered that this property be placed under the control and supervision of the Receiver. *Id*. at 579. We further held that:

> We reverse the Final Order to the extent that it grants real estate, bank stock, individual stocks, and furnishing paid for with CPLA money to the Estate. Any funds traceable from CPLA for the purchase of real estate, bank stocks, individual stocks, furnishings, and any other property purchased in the name of, or for the benefit of, any individual or entity other than CPLA, are part of the AG/Receiver's Claim. In addition, CPLA checks made to "Cash" and to Ford personally are charged against the Estate as the evidence preponderates against the trial court's findings that these funds were for repayment of loans and/or for compensation.

*Id*. at 579. The case was remanded to the probate court for further proceedings consistent with **Ford I**. On July 23, 2003, the Estate filed a notice of insolvency, and, on January 25, 2005, the probate court issued an order declaring the Estate's insolvency.

On May 14, 2004, the Internal Revenue Service ("IRS," or "Appellee") filed a proof of claim in the amount of $765,789.04 for Ford's unpaid 1998-2001 federal income taxes.[1] The IRS's claim referred to 31 U.S.C. §3713 (the Federal Insolvency Statute), which provides that:

> (a)(1) A claim of the United States Government shall be paid first when--
> > (A) a person indebted to the Government is insolvent and--
> > > (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
> > > (ii) property of the debtor, if absent, is attached; or
> > > (iii) an act of bankruptcy is committed; or
> >
> > (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
>
> (2) This subsection does not apply to a case under title 11.
>
> (b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.[2]

From the record, it appears that the IRS's claim was uncontested by the Estate.

In February 2005, the probate court held a second hearing in this matter to carry out the mandate of this Court on remand. On May 3, 2005, the trial court entered its Findings and Memorandum Opinion. Concerning the real property, the trial court found as follows:

- 4404 Elvis Presley: The trial court found that $175,000 was paid to acquire the property. The court found that none of the funds used to purchase this property were traceable to CPLA funds.

---

[1] The Estate of James W. Ford is also an Appellee in this appeal.

[2] Although the IRS's claim was filed beyond the time limit for filing of claims by creditors under T.C.A. §30-2-307(a), the IRS's tax claim is not subject to that time limitation. *See* J.W. Robinson & J. Mobley, *Pritchard on the Law of Wills and Administration of Estates* § 787 (5th ed. 1994).

- 657 Chelsea: The trial court found that $85,000 was paid to acquire this property. All of the $85,000 was traceable to CPLA funds and, consequently, 100% of this property was subject to the Receiver's claim.

- 3673 S. Third: The trial court found that $335,000 was paid to acquire this property. Of that amount, $227,107 was traceable to CPLA funds. Consequently, 68% of the property was subject to the Receiver's claim.

- 2451 Summer: The trial court found that $68,400 was paid to acquire this property. All of that amount was traceable to CPLA funds. Therefore, 100% of the property was subject to the Receiver's claim.

- 831 North Thomas: The trial court found that $180,000 was paid to acquire this property. All of that amount was traceable to CPLA funds. Therefore, 100% of the property was subject to the Receiver's claim.

- 441 Tennessee Street: The trial court found that no CPLA funds were used to procure this property.

Concerning personalty, the trial court found that Ford had purchased antiques and oriental rugs for $27,055 and $10,795, respectively. Because the funds used to purchases these items were traceable to CPLA, the trial court ruled that these items, or their value, were part of the Receiver's claim. In addition, the trial court found that a stock account at Memphis First, and the proceeds from liquidation of the Pershing account, were part of the Receiver's claim because the funds used to purchase the stock in those accounts were traceable to CPLA.

The probate court found that the following amounts were paid either to cash or to Ford personally, or were used to pay third parties for Ford's benefit:

| Payee | Amount |
| --- | --- |
| Ford | $849,331.93 |
| Cash | $332,233.73 |
| Emmitt Ford | $ 40,750.00 |
| Ophelia Ford | $  2,000.00 |
| Dorthea Goodin | $100,714.00 |
| Vector Medical | $ 50,000.00 |

Of this $1,376,029.66, the trial court found that $637,500 was paid to Ford as compensation for services he provided to CPLA. The trial court concluded that the balance of $738,529.66 was for Ford's personal benefit and not for the benefit of CPLA. Consequently, this $738,529.66 was part of the Receiver's claim. The Receiver raises no issue on appeal concerning the correctness of the trial court's factual findings in regard to the amount of property in the Estate traceable to CPLA

funds. Because appellate review generally extends only to issues presented for review, *see* Tenn. R. App. P. 13(b), we will not address these findings.

Upon remand from this Court, the trial court was also faced with the question of whether the Receiver's filing against the Estate constituted a claim against the Estate, which would be paid according to the Claims Act, T.C.A. §30-2-306 et seq., or whether, as the Receiver argued, it constituted a constructive trust upon the property in the Estate for the benefit of the Receiver. In its Order, the trial court concluded that this Court, in *Ford I*, intended the Receiver's filing to be treated under the Claims Act.

The Receiver appeals from this Order and raises one issue for review as stated in his brief:

> Is the Receiver's interest limited to a "claim" under Tenn. Code Ann. §30-2-317, placing him behind administrative expenses and the Internal Revenue Service, or can he recover corporate assets converted by Dr. James Ford to personal use?

We first note that the trial court's decision that the Receiver's claim is to be treated under the priority provisions of the Claims Act is a question of law. As such, we review that decision *de novo* upon the record with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998); *Sims v. Stewart*, 973 S.W.2d 597, 599-600 (Tenn. Ct. App. 1998).

As discussed above, litigation on behalf of the AG/Receiver was commenced by the filing of a "Verified Claim Against the Estate of James W. Ford, M.D." In the "Notice of Appearance and Nature of Claim," the AG/Receiver contends that CPLA is a nonprofit corporation, and states that:

> It appears that some assets of this Estate may be assets of the nonprofit corporation. These assets may include the retained earnings of the corporation (essentially funds received from the Department of Human Services less expenses), the going concern business value of the daycare centers, and any personalty or realty of the corporation.

*Ford I* at 545.

In *Ford I*, this Court affirmed the trial court's finding that CPLA was in fact a corporation and that the going concern as such is subject to the Receivership proceedings now under the jurisdiction of the Davidson County Chancery Court. The remaining language of the AG/Receiver's claim, i.e. "any personalty or realty of the corporation," is the subject of the issue presented in the present appeal. As discussed by this Court in *Ford I*, and as determined by the probate court upon remand, there is no question that Ford used CPLA funds to acquire assets for his own benefit. That being said, we have reviewed the initial pleadings of the AG/Receiver and find that nowhere in those pleadings did the AG/Receiver specifically request that a constructive trust be imposed on those

assets.  Rather, from the pleadings, it appears that the AG/Receiver chose as its remedy a standard claim against the Estate under the Claims Act.   Nonetheless, at the initial trial (i.e. that giving rise to *Ford I*), the probate court did address the possibility of a constructive trust, to wit:

> 39.  The law in Tennessee is that a constructive trust cannot be imposed against a party who receives property in good faith and without notice of an adverse claim.  A constructive trust may only be imposed against one who by fraud, action, duress or abuse of confidence, by commission of wrong or by any form of unconscionable conduct or by concealment or questionable means has attained an interest in property he ought not in equity or good conscience retain.
>
> 40.  The Court feels that Dr. Ford operated in good faith, that there was no notice of an adverse claim, and that the State has not carried its burden of proof.  The Court can find no fraud or other means by which to impose a constructive trust....

In its initial appeal in *Ford I*, the AG/Receiver raised no issue concerning the correctness of the trial court's findings on the issue of a constructive trust.  Consequently, in *Ford I*,  this Court did not address the trial court's findings regarding the possibility of a constructive trust.  Rather, and in accordance with the AG/Receiver's own pleadings, this Court treated the AG/Receiver's filing against the Estate as a verified claim.  In this second appeal, the Receiver now argues that "(1) the corporate funds were to be held in constructive trust by Dr. Ford and, because they were commingled with personal assets, the assets may be recovered by Receiver from the limited assets remaining in the Estate and (2) the action filed by the State was not limited to a statutory claim, but was a pleading seeking return of corporate assets."  We disagree.

In *Memphis Publishing Company v. Tennessee Petroleum Underground Storage Tank Board*, 975 S.W.2d 303 (Tenn.1998), our Supreme Court stated:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 Am.Jur.2d Appellate Review § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn.App.1996). The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. *Ladd*, 939

S.W.2d at 90 (citing other authority). The doctrine does not apply to dicta. *Ridley v. Haiman*, 164 Tenn. 239, 248-49, 47 S.W.2d 750, 752-53 (1932); Ladd, 939 S.W.2d at 90.

The law of the case doctrine is not a constitutional mandate nor a limitation on the power of a court. 5 Am.Jur.2d Appellate Review § 605 (1995); *Ladd*, 939 S.W.2d at 90. Rather, it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. *Ladd*, 939 S.W.2d at 90 (citing other cases). This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts. *Ladd*, 939 S.W.2d at 90; 5 Am.Jur.2d Appellate Review § 605 (1995); 1B James W. Moore, Moore's Federal Practice P0.404[1] (2d ed.1995); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 790 (1981).

Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. *Miller*, *supra*, P0.404[1]. There are limited circumstances which may justify reconsideration of an issue which was decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. *See generally* 5 Am.Jur.2d Appellate Review §§ 611-613 (1995 & 1998 Supp.); *Miller*, *supra*, P0.404[1]; *Wright, et al.*, *supra*, § 4478, at 790; *see e.g. Jett*, 175 Tenn. at 299, 133 S.W.2d at 999 ("The former opinion of the Court of Appeals was the law of the case on the second trial, and the evidence being the same, the circuit judge could not have done otherwise than to submit this issue of sound health to the jury...."); *Clingan v. Vulcan Life Ins. Co.*, 694 S.W.2d 327 (Tenn.App.1985) (The initial appeal did not establish the law of the case because the facts in the second appeal were not substantially the same as the facts in the prior appeal); *Arizona v. California*, 460 U.S. 605, 618, n. 8, 103 S.Ct. 1382, 1391, n. 8, 75

L.Ed.2d 318 (1983) (The doctrine does not apply if the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice."); *Sherley v. Commonwealth*, 889 S.W.2d 794, 798 (Ky.1994) (The law of the case doctrine does not apply where there has been an intervening change of controlling authority.)

*Memphis Publ'g Co.*, 975 S.W.2d at 306.

As discussed above, the AG/Receiver elected to advance its position on the basis of a Claim against the Estate. In *Ford I*, this Court proceeded accordingly and treated the AG/Receiver's case as a verified claim against Ford's Estate. Upon remand, the trial court stated that: "[T]he trial court[,] under the **LAW OF THE CASE DOCTRINE**, is holding that a 'Claim' is governed by the Claims Act and that as a matter of law, the trial court's prior findings of no constructive trust is now final." We agree. Although there are limited circumstances which may justify reconsideration of an issue that was decided in a prior appeal, *see Memphis Publ'g Co.*, 975 S.W.2d at 306, *supra*, we find that no such circumstances exist in this case. Consequently, under the law of the case doctrine, this Court is bound to treat the AG/Receiver's case as a claim against the Estate in this second appeal.

As a claim against the Ford Estate, the AG/Receiver's claim is governed by the Claims Act, T.C.A. §30-2-306 et seq. T.C.A. §30-2-317 (2001) governs the priority of claims against an estate and reads, in pertinent part, as follows:

> (a) All claims or demands against the estate of any deceased person shall be divided into the following classifications, which shall have priority in the order shown:
> > (1) First: Costs of administration, including, but not limited to, premiums on the fiduciary bonds and reasonable compensation to the personal representative and the personal representative's counsel;
> > (2) Second: Reasonable funeral expenses;
> > (3) Third: Taxes and assessments imposed by the federal or any state government or subdivision thereof; and
> > (4) Fourth: All other demands which may be filed as aforementioned within four (4) months after the date of notice to creditors.

Likewise, the Federal Insolvency Act, 31 U.S.C. §3713, *supra*, gives priority to claims filed by the

United States when, as in this case, the estate of a decedent is insolvent. ***See also United States v. Key***, 397 U.S. 322, 324 (1970). In analyzing § 3713, the United States Supreme Court has noted

that the priority created by the statute is based upon a public policy recognizing the necessity of securing an adequate revenue to provide for the public welfare, and that the statute has been applied with this purpose in mind for almost 200 years. *United States v. Moore*, 423 U.S. 77 (1975). Likewise, it is well-settled that in order to effectuate its purpose, § 3713 is to be construed and applied liberally. *Id*.; *United States v. Key*, 397 U.S. 322 at 324. The Supreme Court has further noted that, in cases of insolvency, § 3713 expressly confers an absolute priority to federal claims, permitting on its face no exceptions to that priority. *United States v. State of Vermont*, 377 U.S. 351(1964). Consequently, under both the federal and state statutes, the claim of the IRS would have priority over the claim of the Receiver.

For the foregoing reasons, we affirm the Order of the trial court. We remand the case for such further proceedings as may be necessary consistent with this Opinion. Costs of this appeal are assessed against the Appellant, David S. Weed, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.